**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re:

JON A. HICKS;
AMY E. HICKS,

        Debtors.

---

J. MICHAEL MORRIS, Trustee,

        Plaintiff-Appellant,

v.

JON A. HICKS;
AMY E. HICKS,

        Defendants,

    and

BOEING WICHITA CREDIT UNION,

        Defendant-Third-Party-
        Plaintiff-Appellee,

v.

STATE OF KANSAS,
DEPARTMENT OF REVENUE,
DIVISION OF VEHICLES,

        Third-Party-Defendant-
        Appellee.

No. 06-3243

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 05-CV-1370-MLB)**

Submitted on the briefs:[*]

J. Michael Morris, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, Kansas, for Plaintiff-Appellant.

Eric D. Bruce, Bruce, Bruce & Lehman, L.L.C., Wichita, Kansas, for Defendant-Third-Party-Plaintiff-Appellee Boeing Wichita Credit Union.

Jay D. Befort, Robert W. Challquist, Kansas Department of Revenue, Topeka, Kansas, for Third-Party-Defendant-Appellee Kansas Department of Revenue.

Before **McCONNELL**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

**PORFILIO**, Circuit Judge.

J. Michael Morris, trustee in bankruptcy (trustee), appeals from an order of the district court reversing a decision of the bankruptcy court that granted his complaint for lien avoidance. We conclude that the bankruptcy court correctly determined that the lien the trustee sought to avoid was not perfected as of the date the debtors filed for bankruptcy. The trustee should therefore have been

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

permitted to avoid the unperfected lien. This being the case, we reverse the decision of the district court and remand for further proceedings.

## FACTS

The lien in question arose when the debtors, Jon Anthony Hicks and Amy Elizabeth Hicks, borrowed funds from Boeing Wichita Credit Union (BWCU) to buy a Ford Expedition automobile. The debtors granted BWCU a purchase money security interest in the vehicle. The parties have stipulated to the following facts concerning this transaction and the subsequent history of BWCU's security interest:

> 1. On September 2, 2003, debtors purchased a 1999 Ford Expedition with the VIN of 1FMPU18L5XLC09309 (hereinafter "vehicle") from Innovative Auto Sales. The Credit Union was granted a purchase money security interest in the vehicle.

> 2. On September 2, 2003, Amy Hicks signed a Notice of Security Interest (NOSI) in favor of the Credit Union on the vehicle[.]

> 3. The Credit Union mailed a check in the amount of $52.50 for recording fees to the Kansas Department of Revenue with twenty-one NOSI forms, including the one on the Hick's [sic] vehicle. The check was deposited on September 10, 2003.

> 4. KDOR [Kansas Department of Revenue] acknowledges receiving the NOSI dated September 2, 2003, from the Credit Union on September 8, 2003[.][1]

---

[1]   Although this fact is not part of the stipulation, the record contains a letter from KDOR's attorney to BWCU's attorney indicating that the NOSI relating to the Hicks transaction became stuck to another document and was put into storage without being entered into KDOR's computer as it should have been. Aplt. App. at 69.

5. On October 22, 2003, the debtors made a submission to the Kansas Department of Revenue in applying for title on the vehicle pursuant to K.S.A. 8-135(b)[.] This submission by the debtors failed to note the lien of the [Credit] Union.

6. A paper document denominated "title" was subsequently printed by the Kansas Department of Revenue, indicating its "issued date" to be December 1, 2003. This document did not list the Credit Union or anyone else as a lienholder. This document was mailed to the debtors and it was in their possession on the date of the bankruptcy[.]

7. From at least December 1, 2003, through May 26, 2004, the digital records of the Kansas Department of Revenue showed the debtors to be the owners of the vehicle, with no lien[.]

8. On December 8, 2003, debtors filed for Chapter 7 bankruptcy protection.

9. On or about December 18, 2003, the debtors made submission of documents to the Kansas Department of Revenue[.] This submission of the Debtors listed the lien of the Credit Union. The debtors surrendered the December 1, 2003 title to the Kansas Department of Revenue as part of this submission.

10. On May 26, 2004, the Credit Union's lien began to appear on the digital records of the Department of Revenue, by virtue of the second documents submission of the debtors of December 18, 2003.

11. On May 7, 2004, debtors received their discharge.

Aplt. App. at 65-66.

On March 10, 2004, the trustee filed this adversary proceeding, contending

that he was entitled to avoid BWCU's lien.[2]  The bankruptcy court concluded that

---

[2]     The adversary proceeding was resolved as to the debtors when they agreed that if the trustee were successful in avoiding the lien, they would pay the trustee the remainder of their obligations to BWCU under the pre-petition notes. *See* Aplt. App. at 84-85.

the filing of a NOSI only perfects a security interest until a certificate of title has been issued. BWCU lost its temporary perfection once a title was issued that failed to denote its lien, the court reasoned, and was therefore unperfected at the time the debtors filed for bankruptcy. The bankruptcy court therefore entered a memorandum decision granting the trustee's complaint for lien avoidance.

BWCU appealed to the district court. The district court concluded that the lien the NOSI created continued in effect even though KDOR had issued an "inappropriate" title certificate to the debtors. It reasoned that the title certificate, which did not identify the lien specified in the NOSI, could not make the previously-issued NOSI ineffective. The trustee therefore could not avoid BWCU's lien. Accordingly, the district court reversed and remanded the case to the bankruptcy court.

## ANALYSIS

### 1. Jurisdiction

In response to the trustee's complaint in this action, BWCU filed a third party complaint against KDOR. BWCU sought to hold KDOR liable for improperly issuing a title certificate that omitted BWCU's lien. After the bankruptcy court ruled in favor of the trustee, in order to facilitate an immediate appeal from its decision granting the trustee's complaint for lien avoidance notwithstanding the unresolved third party complaint, it entered a certification and judgment under Fed. R. Civ. P. 54(b).

We ordered the parties to brief whether, in light of the district court's order remanding the case to the bankruptcy court, and given BWCU's unresolved third party complaint, the district court's order was a "final decision" that could be appealed to this court. *See* 28 U.S.C. §§ 158(d), 1291. We now conclude that the order was final and appealable. As the parties acknowledge, the bankruptcy court's only task on remand would have been to dismiss the trustee's complaint, and to dismiss the third-party complaint as moot. These ministerial actions would not have involved significant further proceedings on remand. A district court order that leaves the bankruptcy court with "no significant further proceedings to conduct" on remand is final and may be appealed to this court. *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1251 (10th Cir. 2001) (quotation omitted). We therefore have jurisdiction to consider this appeal.

## 2. Standard of Review

> Our review of the bankruptcy court's decision is governed by the same standards of review that govern the district court's review of the bankruptcy court. Accordingly we review the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard.

*Connelly v. Harris Trust Co. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quotation omitted). Here, the facts are stipulated. This case therefore presents us with a single legal issue that we review de novo: was BWCU's security interest perfected at the time the debtors filed for bankruptcy?

### 3. Governing Law

#### a. Trustee's Status as Lien Creditor

The so-called "strong arm" powers of 11 U.S.C. § 544(a)(1) grant the trustee the status of a hypothetical lien creditor once the bankruptcy petition has been filed. *See LMS Holding Co. v. Core-Mark Mid-Continent, Inc.*, 50 F.3d 1520, 1523 (10th Cir. 1995) (discussing lien creditor status assumed by debtor-in-possession). The rights of such a lien creditor are determined under state law. *Id.* Kansas law subordinates an unperfected security interest to the rights of a person who became a lien creditor prior to perfection. Kan. Stat. Ann. § 84-9-317(a) (2006 Cum. Supp.). Thus, if BWCU's security interest was unperfected under state law at the time the debtors filed for bankruptcy, the trustee may exercise his power to avoid BWCU's lien.

#### b. Perfection by Notation on Certificate of Title

Under Kansas law, a security interest in a vehicle may be perfected only by compliance with that state's certificate-of-title laws. *See id.* §§ 84-9-311(a), (2) (b) (2006 Cum. Supp.). The Kansas certificate-of-title statute provides that "[a]n application for certificate of title shall be made by the owner or the owner's agent upon a form furnished by the division and shall state all liens or encumbrances thereon, and such other information as the division may require." *Id.* § 8-135(c)(1) (2006 Cum. Supp.). Once the application is received, "[t]he county treasurer shall use reasonable diligence in ascertaining whether the facts

stated in such application are true, and if satisfied that the applicant is the lawful owner of such vehicle, or otherwise entitled to have the same registered in such applicant's name, shall so notify the division, who shall issue an appropriate certificate of title." *Id.* The certificate thus issued "shall be in a form approved by the division, and shall contain a statement of any liens or encumbrances which the application shows, and such other information as the division determines." *Id.* Here, the certificate of title that had been issued at the time the debtors filed for bankruptcy did not reflect BWCU's lien.

### c. Perfection by Filing of a NOSI

The Kansas Official UCC Commentary notes that the interplay of § 84-9-311 with certain certificate-of-title statutes may create a "gap" period between the time a certificate of title is applied for and when it is issued, during which a security interest is technically unperfected. *See* § 84-9-311, cmt. 5. Kansas has ameliorated this problem in the case of a purchase money security interest by providing for the filing of a NOSI. *See Mid American Credit Union v. Bd. of County Comm'rs*, 806 P.2d 479, 484 (Kan. Ct. App. 1991) (stating legislature created NOSI procedure "to cover the period between the sale and the purchaser's obtaining a certificate of title."). The applicable statute provides:

> [U]pon sale and delivery to the purchaser of every vehicle subject to a purchase money security interest as provided in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, the dealer or secured party may complete a notice of security interest and when so completed, the purchaser shall execute the notice, in a form

prescribed by the division, describing the vehicle and showing the name and address of the secured party and of the debtor and other information the division requires. The dealer or secured party, within 30 days of the sale and delivery, may mail or deliver the notice of security interest, together with a fee of $2.50, to the division. The notice of security interest shall be retained by the division until it receives an application for a certificate of title to the vehicle and a certificate of title is issued. The certificate of title shall indicate any security interest in the vehicle. Upon issuance of the certificate of title, the division shall mail or deliver confirmation of the receipt of the notice of security interest, the date the certificate of title is issued and the security interest indicated, to the secured party at the address shown on the notice of security interest. The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle described on the date of such mailing or delivery.

Kan. Stat. Ann. § 8-135(c)(5).[3]

### d. Interplay Between § 84-9-311 and § 8-135

It cannot be disputed that BWCU's filing of a NOSI perfected its security interest in the debtors' vehicle. The question is whether this perfection outlasted the subsequent issuance of a title certificate that failed to reflect BWCU's lien. More specifically, does the NOSI procedure provide a permanent, parallel record of perfection, or does it merely afford temporary perfection protection that dissolves upon issuance of a title certificate?

In *Mid American*, the Kansas Court of Appeals addressed this question and reached the latter conclusion. Mid American Credit Union, the holder of a

---

[3]     The Kansas legislature has recently amended § 8-135. *See* 2007 Kan. Sess. L. Ch. 60, 135. These amendments, however, did not take effect until after the events in question and are therefore not pertinent to the issues on appeal.

purchase money security interest, filed a NOSI with KDOR. After thirty days, when no one had applied for a certificate of title, KDOR removed the NOSI from its files. Mid American repossessed the vehicle for non-payment, but subsequently re-sold it to the same purchaser, without filing a new NOSI. The purchaser then submitted an application for title that did not reflect the credit union's lien. After that, the vehicle was re-sold a number of times. The lien was never listed on the subsequent titles issued in connection with these sales. The original purchaser defaulted on the loan and disappeared. The lien holder thereafter sued the county treasurer, county commissioners, and KDOR, contending that its lien had been impaired by their failure to insure that its lien was noted on the certificate of title. The Kansas Court of Appeals determined that the lien holder had lost its perfected status and its right to recover from bona fide purchasers of the vehicle.

In reaching this conclusion, the court explained that a "lien must be noted on the certificate of title to be perfected. Allowing perfection without such a notation would endanger the reliability of sales of vehicles by assignment of title." *Mid American*, 806 P.2d at 484. Notwithstanding Mid American's original filing of a NOSI, its security interest was now unperfected because it was not listed on the certificate of title. *Id.* The court further noted that

> *[w]hile notifying the KDR of a security interest is a method of perfecting a lien on a vehicle, it is only meant to perfect the lien until the certificate of title is issued. Beneficial Finance [v. Schroeder,]*

-10-

737 P.2d 52 [, 53 (Kan. Ct. App. 1987)]. Allowing it to be a method
of perfection beyond this period would again diminish the reliability
of a certificate of title.

*Id.* (emphasis added).

We find the rationale of *Mid American* persuasive on the issue here.[4]  If a

NOSI were allowed to contradict a certificate of title, certificates of title would

lose their reliability as a method of determining whether a vehicle is encumbered

by a lien.

In addition, we find the plain language of § 8-135(c)(5) compelling.  That

statute only requires the KDOR to keep the NOSI on file "until it receives an

application for a certificate of title to the vehicle and a certificate of title is

issued."  *Id.*  Application for a certificate of title, which supersedes the NOSI, is

not an optional procedure.  Under § 8-135(c)(6), "[i]t shall be unlawful for any

person to operate in this state a vehicle required to be registered under this act, or

to transfer the title to any such vehicle to any person or dealer, unless a certificate

of title has been issued as herein provided."  The language of § 8-135(c)(5)

suggests that once a lien holder avails itself of the "permanent" method of

perfection by notation on the certificate of title, the temporary perfection created

_____

[4]      In *Morris v. CIT Group/Equipment Financing, Inc. (In re Charles)*,
323 F.3d 841 (10th Cir. 2003), we described notation on a certificate of title and
filing a NOSI as "two *alternative ways* that a secured creditor on a motor vehicle
can perfect its security interest."  *Id.* at 843 (quotation omitted; emphasis added).
That statement, however, was dictum in light of the issues at stake in *Charles*,
and in any event did not purport to address the durational limitations of a NOSI.
This dictum in *Charles* is therefore not binding on us here.

-11-

by a NOSI disappears. The lien holder is then protected by the further provision in § 8-135(c)(5) that "[t]he certificate of title shall indicate any security interest in the vehicle."

The district court concluded that the title certificate issued to the debtors did not supersede the NOSI because it was not an "appropriate" certificate of title. While it is true that KDOR is charged with issuing an "appropriate certificate of title" that "shall contain a statement of any liens or encumbrances," § 8-135(c)(1), taken in context this statutory language refers only to KDOR's duties. There is no indication that it is intended to govern the rights of innocent third-party purchasers when a lien has been omitted from the certificate of title. If a purchaser were charged with ascertaining whether a facially valid certificate of title "appropriately" listed all liens, the function of a certificate of title, to provide a reliable means of determining the ownership and encumbrances of a vehicle, would be defeated.

Nor do we accept KDOR's argument that the debtors' second application for a certificate of title, which did reflect BWCU's lien, related back to the filing of the NOSI, thereby retroactively defeating the trustee's rights as a lien creditor. A trustee's rights are established as of the date the bankruptcy is filed. *See LMS Holding Co.*, 50 F.3d at 1523. KDOR's reliance on *In re Ridley*, 50 B.R. 51 (Bankr. M.D. Tenn. 1985), is misplaced. In *Ridley*, prior to the filing date of the debtor's bankruptcy, the Tennessee Motor Vehicle Division had suspended a title

-12-

that did not reflect the creditor's lien, and had instructed the debtor to return the faulty title. After the debtor filed bankruptcy, the Division re-issued the title, correctly noting the lien. The facts of *Ridley* are thus distinguished from those of this case and we have no reason to believe the Kansas courts would apply the reasoning of that case to the circumstances present here.

Finally, both BWCU and KDOR argue that a Kansas statute enacted in 2003, permitting "electronic certificates of title" designed to reflect the NOSI received by KDOR, Kan. Stat. Ann. § 8-135d (2006 Cum. Supp.), casts doubt on the whole matter of reliance on "paper" certificates of title. We need not address the impact of § 8-135d, however, because the electronic title record that the trustee could have consulted at the time the debtors filed bankruptcy *also* failed to reflect the existence of BWCU's lien. The issue here is official notice of the lien, and the trustee had none.

The judgment of the district court is therefore REVERSED and this case is REMANDED for further proceedings in accordance with this opinion.