(264 P.3d 491)
No. 104,316

STANLEY BANK, *Appellee*, v. JOHNNY R. PARISH, *et al.*, *Defendants*, and BAZIN EXCAVATING, INC. and ROBERT A. BAZIN, *Appellants*.

Opinion filed September 9, 2011.

*Michael A. Millett*, of Law Offices of Michael A. Millett, P.A., of Overland Park, for appellants.

*R. Scott Beeler*, of Lathrop & Gage LLP, of Overland Park, for appellee.

Before ATCHESON, P.J., HILL and STANDRIDGE, JJ.

STANDRIDGE, J.: Robert A. Bazin (Robert) and Bazin Excavating, Inc. (Bazin Excavating) appeal the district court's decision to grant summary judgment in favor of Stanley Bank (Bank) in this dispute over proceeds from the sale of a 2006 GMC Yukon, which was seized by Bazin Excavating in order to satisfy a judgment despite the Bank's purchase money security interest in the truck. For the reasons stated below, we affirm in part, reverse in part, and remand with directions.

## Facts

In early 2006, the Bank loaned Johnny and Kellie Parish $40,000 to purchase a 2006 GMC Yukon. As security for the loan, Johnny and Kellie granted the Bank a security interest in the Yukon. The Bank properly filed its notice of this security interest with the Kansas Department of Revenue (KDR) and, thereafter, the lien was on record in KDR's electronic lien filing system known as E-lien and recorded on the truck's paper title and registration receipt.

In a lawsuit unrelated to either the Yukon or the Bank, the district court in Johnson County, Kansas, granted default judgment against Johnny Parish in favor of Bazin Excavating. Following judgment, Bazin Excavating levied on the Yukon and proceeded to have it sold at public auction.

In March 2008, the Bank filed suit against Robert and Bazin Excavating in conjunction with the levy and sale of the Yukon. Both parties filed motions for summary judgment. After considering the motions and arguments of counsel, the district court granted summary judgment in favor of the Bank. The court found the statement of facts in the Bank's motion to be uncontroverted and adopted the facts and reasoning set forth therein. The court ultimately awarded damages to the Bank in an amount equal to the monetary value of the Yukon at the time of the sale.

## The Underlying Motion for Summary Judgment

In the dispositive motion it filed with the district court, the Bank sought summary judgment on the following counts of its five-count petition:

- Count I, within which the Bank sought a declaratory judgment that the Bank has a security interest in the Yukon that is superior to all other prior and existing interests.
- Count II, within which the Bank sought a declaratory judgment that Bazin Excavating conducted a sale of the Yukon without meeting and satisfying the statutory requirements as set forth in K.S.A. 60-2406 and 60-2409.
- Count IV, within which the Bank asserted a claim of conversion against Bazin Excavating for exercising unlawful domin-

ion and control over the proceeds from the sale of the Yukon at the September 21, 2007, auction.

- Count V, within which the Bank asserted a claim of conversion against Robert Bazin and/or Bazin Excavating for exercising unlawful dominion and control over the Yukon.

In the journal entry granting summary judgment in favor of the Bank on all four of these counts, the district court relied on, and then subsequently adopted, the uncontroverted facts and legal analysis set forth by the Bank in its motion.

*The Standard of Review*

In ruling on a summary judgment motion, the appellate court applies the same legal standard as the district court: Summary judgment is appropriate only when the pleadings, affidavits, and other materials filed with the court show that no genuine issue exists as to any important fact and that the moving party is entitled to judgment as a matter of law. All facts and inferences that may reasonably be drawn from the evidence must be resolved in favor of the nonmoving party. Even so, the nonmoving party must come forward with some evidence establishing a dispute as to the facts that are material to the claim. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

*A Brief Overview of Kansas Law on Secured Transactions in the Context of Personal Property Subject to Certificates of Title in Kansas*

Commercial transactions in Kansas are governed by the Kansas Uniform Commercial Code (UCC). K.S.A. 84-1-101 *et seq.* More specifically, the laws relating to secured transactions and the creation, attachment, perfection, priority, and enforcement of a security interest are set forth in Article 9 of the UCC. K.S.A. 84-9-101 *et seq.*

A security interest is a legal interest in personal property that secures the performance of an obligation, usually the payment of a debt. K.S.A. 2010 Supp. 84-1-201(35). The personal property subject to the security interest is commonly referred to as collateral. K.S.A. 2010 Supp. 84-9-102(12). A security interest attaches

to collateral when it becomes enforceable against the debtor. To be enforceable, the secured party must give value to the debtor, the debtor must acquire legal rights in the collateral or the power to transfer rights in the collateral to a secured party, and the debtor must authenticate a security agreement that provides a description of the collateral. K.S.A. 2010 Supp. 84-9-203(a)-(b). Upon default of the underlying debt, a secured creditor is entitled to take possession and dispose of the collateral. K.S.A. 2010 Supp. 84-9-609.

In order to protect a secured interest in collateral against third parties who may claim a secured or unsecured interest in the same collateral, a secured creditor typically must file a financing statement with the appropriate government agency setting forth the name of the debtor, the name of the secured party, and the description of the collateral. K.S.A. 2010 Supp. 84-9-310(a). The process of filing this financing statement, usually referred to as "perfecting" the security interest, provides public notice to interested parties that a prior security interest exists.

The UCC creates an exception to the required filing of a financing statement when the secured transaction involves a purchase money security interest, which is created when the secured collateral is purchased by the debtor with money provided by the creditor just for that purpose. K.S.A. 2010 Supp. 84-9-103(b)(1); K.S.A. 2010 Supp. 84-9-309(1); K.S.A. 2010 Supp. 84-9-310(b)(2). A purchase money security interest ordinarily is deemed perfected at the time it attaches to the collateral. K.S.A. 2010 Supp. 84-9-309.

Notably, and relevant to the facts presented here, the UCC provides a secondary exception to the underlying exception, which as noted above deems perfection of a purchase money security interest to automatically occur upon attachment. More specifically, a purchase money security interest in property that is subject to any certificate-of-title law in Kansas, including automobiles, will not be perfected upon attachment but instead can be perfected only by compliance with K.S.A. 2010 Supp. 8-135(c)(5), the Kansas statute applicable to certificates of title and security interests in motor vehicles. K.S.A. 2010 Supp. 84-9-311(a)(2).

K.S.A. 2010 Supp. 8-135(c)(5) provides:

"[U]pon sale and delivery to the purchaser of every vehicle subject to a purchase money security interest as provided in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, the dealer or secured party may complete a notice of security interest and when so completed, the purchaser shall execute the notice, in a form prescribed by the division, describing the vehicle and showing the name and address of the secured party and of the debtor and other information the division requires. . . . The dealer or secured party, within 30 days of the sale and delivery, may mail or deliver the notice of security interest, together with a fee of $2.50, to the division. The notice of security interest shall be retained by the division until it receives an application for a certificate of title to the vehicle and a certificate of title is issued. The certificate of title shall indicate any security interest in the vehicle. Upon issuance of the certificate of title, the division shall mail or deliver confirmation of the receipt of the notice of security interest, the date the certificate of title is issued and the security interest indicated, to the secured party at the address shown on the notice of security interest. The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the vehicle, as referenced in K.S.A. 2010 Supp. 84-9-311, and amendments thereto, on the date of such mailing or delivery. The county treasurers shall mail a copy of the title application to the lienholder. For any vehicle subject to a lien, the county treasurer shall collect from the applicant a $1.50 service fee for processing and mailing a copy of the title application to the lienholder."

Although more procedural than substantive, we believe it important to mention the relatively new statute pertaining to the electronic certificate of title. To that end, the division of motor vehicles (Division) is now required to issue a secured certificate of title only in electronic form when (1) a secured creditor files a valid notice of security interest; (2) when a purchaser applies for certificate of title for a vehicle that is subject to an existing lien. K.S.A. 2010 Supp. 8-135d(a). The Division retains sole possession of the electronic certificate of title until the lien is lawfully released.

We conclude our legal overview by providing a two-point summary of the perfection procedure based on the statutes discussed above when they are construed in conjunction with each other. First and foremost, Kansas law provides that a purchase money security interest in an automobile held by a secured creditor is perfected when the certificate of title issues with the lien noted thereon. Secondly, and because purchasers do not always register and title their vehicles in a timely manner, Kansas law affords a secured creditor the opportunity to perfect its purchase money

security interest during the interim time period between purchase and issuance of a certificate of title by timely mailing or delivering a formal notice of security interest, along with the applicable fee, to the Division.

*Count I: Declaratory Judgment Prioritizing the Bank's Security Interest*

The issue presented in this first count is whether the Bank's security interest in the Yukon takes priority over legal interests previously or currently held by Robert and/or Bazin Excavating. In order to determine priority, we first must determine the type of interest held by each of the parties in the Yukon. To do so, we review the undisputed material facts, which are set forth below.

In early 2006, the Bank loaned Johnny and Kellie Parish $40,000 to purchase the Yukon. The transaction was made pursuant to a note and security agreement executed by the parties, within which the Yukon was designated as collateral to secure the loan. Because Johnny and Kellie Parish purchased the Yukon with the money loaned to them by the Bank for that very purpose, the Bank held a purchase money security interest in the Yukon. K.S.A. 2010 Supp. 84-9-103(b)(1).

On January 31, 2006, the Bank properly completed and timely mailed to the Division a notice of security interest in the Yukon. In doing so, the Bank properly perfected its purchase money security interest in the Yukon on that date. On April 3, 2006, the Division registered Johnny and Kellie Parish as owners of the Yukon subject to the Bank's lien and issued an electronic certificate of title with the Bank's lien noted thereon. By operation of law, the electronic certificate of title noting the Bank's lien necessarily preserved the Bank's previously perfected purchase money security interest in the Yukon.

On June 26, 2007, over a year after the Bank's purchase money security interest in the Yukon was perfected, Bazin Excavating recovered a money judgment against Johnny Parish as the result of a lawsuit unrelated to either the Yukon or the Bank. On July 2, 2007, the district court entered an order in conjunction with this separate lawsuit that authorized the sheriff to attach designated

real and personal property owned by Johnny Parish to satisfy the judgment against Parish held by Bazin Excavating. The order of attachment was executed on July 3, 2007, and the sheriff seized the Yukon as part of that order.

On August 29, 2007, Bazin Excavating filed a notice of sale for the Yukon, which designated the sale to be held at auction on September 21, 2007. Two days before the sale was to take place, Robert, the president and sole owner of Bazin Excavating, drove to Topeka in order to obtain a certificate of title for the Yukon. According to Robert, he was told to have the title available at the time of the sale, but he did not recall who told him this. After telling the clerk about the impending sheriff's sale of the Yukon and the need for a certificate of title prior to such a sale, Robert presented the clerk with paperwork, which presumably consisted of a certified copy of the judgment, the order of attachment, the order of execution, the attachment inventory, and the order of sale. Notably, Robert did not inform the clerk that he knew the Bank had a lien on the Yukon. When the clerk handed Robert a paper certificate of title to the Yukon void of any lien, Robert reportedly said: " 'I was under the presumption there possibly could have been a lien on one of these [Robert also seized a motor home].' " The clerk allegedly responded with the comment: " 'not any more [sic].' " At the September 21, 2007, auction, Robert—on his own behalf and not on behalf of Bazin Excavating—was the high bidder and purchased the Yukon for $23,000.

At some point after Johnny and Kellie Parish defaulted on their loan, the Bank discovered the Yukon had been sold and thereafter made a demand against Robert and Bazin Excavating for the proceeds from the sale. In support of this demand, the Bank highlighted the fact that the electronic certificate of title for the Yukon held by the Division, which the Bank had accessed via the Division's website, properly reflected that the Yukon continued to be subject to a lien by the Bank. Both Robert and Bazin Excavating refused to yield to the Bank's demand, referring to the paper certificate of title for the Yukon that Robert received on behalf of Bazin Excavating from the clerk in Topeka prior to the sale upon which there was no notice of existing lien.

Based on the undisputed facts above, we make the following conclusions of law with regard to the type of interest held by each of the parties in the Yukon and the legal priority thereof:

- At all times relevant to this action, the Bank held a valid perfected purchase money security interest in the Yukon.
  - See K.S.A. 2010 Supp. 84-9-311(a)(2) (a secured creditor perfects its purchase money security interest during the interim time period between purchase and issuance of a certificate of title by timely mailing or delivering a formal notice of security interest, along with the applicable fee, to the Division); K.S.A. 2010 Supp. 8-135(c)(5) (a purchase money security interest in an automobile held by a secured creditor is perfected when the certificate of title issues with the lien noted thereon).
- From June 26, 2007, to September 21, 2007, Bazin Excavating's legal interest in the Yukon was that of lien creditor.
  - See K.S.A. 84-9-102(a)(52) (defining "lien creditor" as "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like").
- After the sale of the Yukon from Bazin Excavating to Robert on September 21, 2007, Robert's legal interest in the Yukon was that of a buyer of consumer goods.
  - See K.S.A. 2010 Supp. 84-9-102(a)(23) (defining consumer goods as goods that are used or bought primarily for personal, family, or household purposes).
- The Bank's perfected purchase money security interest in the Yukon takes priority over Bazin Excavating as a lien creditor because the Bank's purchase money security interest was perfected before Bazin Excavating became a lien creditor.
  - See K.S.A. 2010 Supp. 84-9-317(a)(2) (providing that a security interest is subordinate to the rights of a person who is a lien creditor in only those circumstances when the person becomes a lien creditor before the security interest is perfected).
- The Bank's perfected purchase money security interest in the Yukon takes priority over Robert as a buyer of consumer

goods because Robert bought the Yukon after the filing of the financing statement covering the Yukon, regardless of the clerk's mistake in issuing a paper certificate of title for the Yukon that failed to note the Bank's lien. Although immaterial as a matter of law, we note that at all times relevant to the dispute here, the Division retained an electronic certificate of title for the Yukon, which properly reflected that the Yukon continued to be subject to a lien by the Bank.

- See K.S.A. 2010 Supp. 84-9-320(b)(4) (a buyer of consumer goods takes free of a security interest, even if perfected, only if the purchase was effected before the filing of a financing statement covering the goods); K.S.A. 2010 Supp. 84-9-311(b) (compliance with the perfection requirements of the applicable certificate-of-title statute is the equivalent of filing a financing statement); K.S.A. 2010 Supp. 84-9-320(b)(4), Comment 5. ("After a financing statement has been filed or the perfection requirements of the applicable certificate-of-title statute have been complied with [compliance is the equivalent of filing a financing statement; see Section 9-311(b)], all subsequent buyers, under the rule of subsection [b], are subject to the security interest.").

From the above, we conclude as a matter of law that the Bank had a security interest in the Yukon that was superior to all other prior and existing interests; thus, the district court did not err in granting summary judgment in favor of the Bank on this issue.

Although not critical to our decision, we note in closing that the conclusion we have reached today is supported by an important legal principle articulated by the legislature in K.S.A. 2010 Supp. 84-9-337, which by its title governs the priority of security interests in goods covered by certificate of title. Relevant to the issue presented here, this statute governs those situations when a security interest in goods is perfected pursuant to applicable certificate of title laws but a certificate of title subsequently is issued by the state that does not reflect the security interest. In this situation, a buyer (other than a dealer) of the goods is entitled to rely on the unencumbered certificate of title and to take free of the perfected se-

curity interest only if the buyer (a) gives value for the goods; (b) receives delivery of the goods after the unencumbered certificate of title is issued; and (c) receives delivery of the goods without knowledge of the security interest. K.S.A. 2010 Supp. 84-9-337(1). Although this statute by its language applies only when "a security interest in goods is perfected by any method *under the law of another jurisdiction*," the qualified nature of the protection reflects an intention by the legislature to assure that only an innocent purchaser will qualify for the exceptional safeguards afforded by this section. (Emphasis added.) K.S.A. 2010 Supp. 84-9-337.

Applying this legal principle to the facts here, we find Robert is not entitled to rely on the unencumbered certificate of title and to take free of the Bank's perfected security interest. As to the first prerequisite for protection, Robert has failed to come forward with any evidence to controvert the Bank's claim that Robert gave value for the Yukon at the auction. As to the second prerequisite for protection, the undisputed facts establish that the Yukon was delivered to Robert on July 3, 2007, immediately after the order of attachment was executed, which was *before* the unencumbered certificate of title was issued on September 20, 2007. As to the third prerequisite for protection, the undisputed facts show that Robert knew about the Bank's security interest in the Yukon, both when the Yukon was delivered to him on July 3, 2007, and when he retained possession and/or received delivery of the Yukon after he purchased at the auction on September 21, 2007.

*Count II: Declaratory Judgment Regarding Improper Notice and Sale of the Yukon*

We begin with K.S.A. 60-2406, which provides that the property of the judgment debtor may be levied upon and sold on execution subject to existing liens. If the lienholder asserts a right of possession and does not consent to the sale, however, the sale shall not be completed unless for an amount in excess of the interest as determined by the court. If sold, the net proceeds are applied first to the satisfaction of the lienholder and any balance then applied to the judgment debt.

The undisputed facts establish that Bazin Excavating sold the Yukon to Robert at auction without the consent of the Bank for an amount less than the Bank's lien and then failed to remit to the Bank the proceeds from that sale. Notably, however, there is no evidence in the record that the Bank ever asserted a right of possession prior to the sale, which triggers the statutory requirements referenced above. As such, there is insufficient evidence from which to conclude as a matter of law that Bazin Excavating failed to comply with the applicable provisions of K.S.A. 60-2406.

With regard to K.S.A. 60-2409, we begin by noting that the 2010 amendments to the statute are inapplicable to the facts of this case because the Yukon was sold in 2007. The version of the statute applicable here required notice for the sale of a judgment debtor's personal property to be given at least 10 days before the day of sale by publication at least once each week for 2 consecutive weeks. K.S.A. 60-2409. The undisputed facts establish that Bazin Excavating published a notice of sale in *The Wyandotte Echo* on September 6, 13, and 20, 2007, which satisfied the statutory requirement for publication.

In addition to publication, K.S.A. 60-2409 also required notice of the sale—by restricted mail within 5 days of the first publication—to those known by the plaintiff to have a security interest in the property. The Bank asserts Bazin Excavating knew it had a security interest in the Yukon but failed to comply with this provision of the statute by providing a notice of the sale to the Bank by restricted mail within 5 days of publication. In support of this assertion, the Bank relies on the affidavit of Walt Dotson, the Bank's executive vice president, declaring that he did not recall receiving such a notice.

Contrary to the Bank's assertion, Bazin Excavating contends it fully complied with the notice requirements of K.S.A. 60-2409. In support of this contention, Bazin Excavating included in the record on appeal a receipt dated August 30, 2007, which indicates that a letter was sent to the Bank via certified mail and a certified mail receipt signed by Walt Dotson on September 1, 2007, which indicates that the Bank received the letter. Bazin Excavating contends it also sent an amended notice to the Bank by facsimile on

September 19, 2007, in order to correct an error in the Yukon's vehicle identification number. Robert concedes on behalf of Bazin Excavating that this notice was sent by fax only 2 days before the sale and thus did not satisfy the statutory notice requirement to send the notice by restricted mail within 5 days of the date of the first publication.

Considering the facts and all reasonable inferences drawn from the evidence in a light most favorable to the nonmoving party, we find the August 30, 2007, receipt indicating that a letter was sent to the Bank via certified mail and the September 1, 2007, certified mail receipt signed by Walt Dotson on September 1, 2007, indicating that the Bank received the letter creates a dispute of material fact with regard to whether Bazin Excavating provided notice of sale to the Bank by restricted mail within 5 days of the first publication as required by K.S.A. 60-2409. Accordingly, the district court erred by granting summary judgment in favor of the Bank on this issue.

*Counts IV and V: Conversion*

"Conversion is 'the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. [Citation omitted.]' " Particularly relevant in this case, " '[c]onversion is a strict liability tort. [Citation omitted.] The required intent is shown by the use or disposition of property belonging to another, and knowledge or ignorance as to ownership of the property is irrelevant. [Citations omitted.]' " *Millennium Financial Services, LLC v. Thole*, 31 Kan. App. 2d 798, 808, 74 P.3d 57 (2003). Given this legal standard, the question of conversion in this case turns on whether the actions of Robert or Bazin Excavating in exercising control and dominion over the Yukon and the proceeds from the sale of the Yukon hindered the Bank's rights related to the collateral or the proceeds thereof.

According to the note and security agreement, loan payments for the Yukon were due from the Parishes on the first of every month beginning March 1, 2006, and the loan would fall into default if they failed to make a payment when due or if the prospect

of redeeming the collateral became significantly impaired. According to the Bank's loan ledger, the last payment made on the Parish loan was received by the Bank on March 8, 2007, and no payment has since been received. Thus, the loan was deemed to have fallen into default on April 2, 2007, and the Bank was entitled to take possession of the Yukon on that day. See K.S.A. 2010 Supp. 84-9-609(a)(1). On July 3, 2007, the sheriff seized the Yukon in order to satisfy a judgment against Parish held by Bazin Excavating. Given the Bank's prospect of redeeming the Yukon as collateral became significantly impaired by this seizure, the Bank had a second justification for deeming the loan to be in default and thus exercising control over and obtaining possession of the Yukon on that day. See K.S.A. 2010 Supp. 84-9-609(a)(1).

Notwithstanding the Bank's right on July 3, 2007, to control and possess the Yukon, we do not believe that Bazin Excavating's claim of ownership over the Yukon on that day hindered the Bank's right to exert control over and obtain possession of it. Neither do we believe that the subsequent sale of the Yukon hindered the Bank's right to exert control over and obtain possession of the Yukon. The sheriff's sale under attachment was not in itself wrongful, and the Bank's rights in the collateral and the proceeds thereof were not destroyed by the attachment sale. See K.S.A. 2010 Supp. 84-9-315 (security interest in collateral continues notwithstanding sale thereof unless the secured party authorized disposition free of the security interest and, upon such sale, such security interest attaches to any identifiable proceeds of collateral).

Significantly, it is not until March 19, 2008—when the Bank notified Robert and Bazin Excavating of its superior security interest and requested they surrender either the Yukon or proceeds from its sale—that Robert and Bazin Excavating affirmatively hindered the Bank's right to exert control over and obtain possession of the Yukon or the proceeds from its sale. Based on the undisputed facts and the applicable law, we reverse summary judgment in favor of the Bank on Count V with respect to the claim of conversion against Bazin Excavating regarding the Yukon. Nevertheless, we affirm summary judgment in favor of the Bank on Count IV with respect to the claim of conversion against Bazin Excavating re-

garding proceeds from sale of the Yukon and on Count V with respect to the claim of conversion against Robert Bazin regarding the Yukon.

Based on the discussion above,

(1) that portion of the district court's decision to grant summary judgment in favor of the Bank on Counts I and IV of the petition and on Count V of the petition with respect to Robert Bazin is affirmed; and

(2) that portion of the district court's decision to grant summary judgment in favor of the Bank on Count II of the petition and on Count V of the petition with respect to Bazin Excavating is reversed and remanded with directions to vacate judgment on these particular claims. Although remand is necessary to vacate judgment on these claims, we leave to the district court whether any actual controversy continues to exist in this case given the district court's declaration, which we have affirmed, that the Bank holds a perfected purchase money security interest superior to any other right and the district court's decision to grant the Bank's conversion claims, which we also have affirmed, the result of which provides the Bank with a legal right to retrieve the Yukon and/or the proceeds from its sale.