No. 104,316

STANLEY BANK, *Appellee*, v. JOHNNY R. PARISH, *et al.*, *Defendants*, and BAZIN EXCAVATING, INC. and ROBERT A. BAZIN, *Appellants*.

(317 P.3d 750)

Opinion filed January 24, 2014.

*Michael A. Millett*, of Law Offices of Michael A. Millett, P.A., of Overland Park, argued the cause and was on the brief for appellant.

*R. Scott Beeler*, of Lathrop & Gage, LLP, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: This court granted review in this case to consider, as a matter of first impression, whether the purchaser of a vehicle who obtained a paper certificate of title from the Kansas Department of Revenue showing no existing liens could take the vehicle free of a bank's properly perfected purchase money security interest in the vehicle which was recorded in the Kansas Department of Revenue's digital records and noted on an electronic certificate of title issued in the name of the original purchasers. We conclude the Court of Appeals panel correctly considered and applied perfection and priority rules under the Uniform Commercial Code (UCC), K.S.A. 84-9-101 *et seq.*, to conclude the purchaser did not take free and clear of the bank's security interest.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2006, Stanley Bank (the Bank) loaned $40,000 to Johnny and Kellie Parish to purchase a 2006 GMC Yukon. As security for the loan, the Parishes gave the Bank a security interest in the Yukon. That same day, the Bank filed a notice of security interest (NOSI) with the Kansas Department of Revenue (KDOR) utilizing the KDOR's motor vehicle electronic lien filing system. On April 3, 2006, the Parishes applied for a title and registered the vehicle in their name. The KDOR provided a title and registration receipt to the Parishes reflecting the Bank's lien on the Yukon. K.S.A. 2012 Supp. 8-135d requires the KDOR to retain such a lien-encumbered title electronically. It is undisputed that at all relevant times hereto, the KDOR's electronic lien system reflected the Bank's perfected lien and the Parishes' electronic title.

The Parishes defaulted on the Yukon loan in April 2007 by failing to make payments. In June 2007, Johnny Parish's former employer, Bazin Excavating, Inc. (Bazin Excavating), obtained a money judgment against Parish in an action unrelated to the Yukon. Robert Bazin (Bazin) is the president and sole owner of Bazin Excavating.

To satisfy its judgment against Parish, Bazin Excavating obtained a court order authorizing the attachment of Parish's personal property, including the Yukon and a motor home. Both vehicles were seized on July 3, 2007. On or before that date, Bazin saw a copy of the Yukon's title and registration receipt reflecting the Bank's lien.

At the end of August 2007, Bazin Excavating obtained a court order authorizing the sale of the Yukon and the motor home, and filed a notice of sale with the district court indicating the vehicles would be sold at auction on September 21, 2007. Bazin Excavating also sent notice of the sale to the Bank and published notice in a Wyandotte County paper.

On September 20, 2007, Bazin, acting on behalf of Bazin Excavating, drove to the KDOR's motor vehicle office in Topeka, showed the clerk some court documents related to the money judgment against Parish, and requested titles for the Yukon and the motor home so he could sell them at auction. The clerk gave Bazin a paper certificate of title for each vehicle. The Yukon's paper title reflected an application and purchase date of September 19, 2007, and a printed date of September 20, 2007. Further, the title indicated that Bazin Excavating owned the Yukon and that it was not subject to any liens.

On September 21, 2007, Bazin, acting on behalf of himself rather than Bazin Excavating, purchased the Yukon and the motor home at auction for $62,000, paying $23,000 for the Yukon.

In March 2008, after Bazin Excavating failed to respond to demand letters from the Bank requesting that Bazin Excavating turn over the proceeds from the sale of the Yukon to the Bank, the Bank filed suit against Bazin Excavating and Bazin (collectively, "the defendants"). The Bank sought a declaratory judgment as to the superiority of its perfected purchase money security interest over any interests held by the defendants (Count I) and an order striking the sale of the Yukon based on Bazin Excavating's failure to comply with the notice requirements of K.S.A. 60-2406 and K.S.A. 60-2409 before conducting the sale (Count II). Further, the Bank named the Parishes as the defendants and sought to foreclose its lien against them (Count III). Additionally, citing its superior security

interest, the Bank claimed Bazin Excavating unlawfully converted the proceeds from the sale of the Yukon (Count IV) and that Bazin Excavating and/or Bazin unlawfully converted the Yukon (Count V). In June 2008, the Bank obtained a default judgment against the Parishes on Count III, and that count was not at issue on appeal.

Ultimately, the Bank and the defendants filed cross-motions for summary judgment. After hearing oral argument, the district court adopted the Bank's uncontroverted facts and granted summary judgment in favor of the Bank on Counts I, II, IV, and V for the reasons argued in the Bank's motion. The court awarded the Bank $23,000 in damages, *i.e.*, the proceeds of the sale. The court denied the defendants' summary judgment motion "for the reasons previously stated." Although those reasons are not entirely clear from the court's ruling, it appears the district court found it significant that Bazin had prior knowledge of the Bank's lien and failed to provide that information to the KDOR when he obtained the "clean" title.

The defendants appealed, and the Court of Appeals affirmed the district court's grant of summary judgment in favor of the Bank on three claims: (1) the Bank's request for a declaratory judgment indicating its superior security interest in the Yukon, (2) the Bank's claim that Bazin Excavating converted the proceeds from the sale of the Yukon, and (3) the Bank's claim that Bazin converted the Yukon. The panel vacated the district court's grant of summary judgment on the Bank's claims that Bazin Excavating failed to provide proper notice before the sale and that Bazin Excavating converted the Yukon. *Stanley Bank v. Parish*, 46 Kan. App. 2d 422, 435, 264 P.3d 491 (2011).

This court granted the defendants' petition for review of the Court of Appeals' decision under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b). The Bank did not cross-petition for review from the Court of Appeals' decision rejecting its notice claim and its conversion claim as to Bazin Excavating. Therefore, those issues are not before this court. See Supreme Court Rule 8.03(g)(1) (2013 Kan. Ct. R. Annot. 74); *State v. Allen*, 293 Kan. 793, 795-96, 268 P.3d 1198 (2012).

## THE DISTRICT COURT DID NOT ERR IN GRANTING THE BANK'S SUMMARY JUDGMENT MOTION

The defendants seek review of two issues: (1) whether the district court erred in granting the Bank's summary judgment motion and (2) whether the district court erred in denying the defendants' summary judgment motion. The defendants recognize that the second issue was raised on appeal but not decided by the Court of Appeals.

### Standard of Review

Our review of summary judgment motions is well known.

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012) (quoting *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 200 P.3d 333 [2009]).

### Analysis

As noted, the Court of Appeals affirmed the district court's grant of summary judgment in favor of the Bank on the Bank's request for a declaratory judgment that it has a superior security interest in the Yukon, as well as the Bank's claims that Bazin Excavating converted the proceeds from the sale of the Yukon and Bazin converted the Yukon. However, throughout this litigation, the defendants have addressed these claims collectively, consistently arguing the Bank lacks a perfected security interest in the Yukon because Bazin received a paper title from the KDOR that did not reflect the Bank's lien. Accordingly, we have addressed below the defendants' only discernibly coherent argument—their "clean title" argument.

*The panel correctly determined that the Bank's perfected purchase money security interest has priority over any interests held by the defendants.*

Although the parties failed to fully develop their arguments regarding the statutory basis of the Bank's priority claim, the panel initially provided a succinct overview of secured transactions law. See *Stanley Bank*, 46 Kan. App. 2d at 424-27. In relevant part, the panel stated:

"[A] purchase money security interest in property that is subject to any certificate-of-title law in Kansas, including automobiles, will not be perfected upon attachment but instead can be perfected only by compliance with K.S.A. 2010 Supp. 8-135(c)(5), the Kansas statute applicable to certificates of title and security interests in motor vehicles. K.S.A. 2010 Supp. 84-9-311(a)(2)." 46 Kan. App. 2d at 425.

As the panel further noted, a secured party complies with K.S.A. 2012 Supp. 8-135(c)(5) by filing a notice of security interest with the KDOR. Importantly, that statute definitively provides that "[t]he proper completion and timely mailing or delivery of a notice of security interest . . . shall perfect a security interest in the vehicle as referenced in K.S.A. 2012 Supp. 84-9-311 . . . on the date of such mailing or delivery." K.S.A. 2012 Supp. 8-135(c)(5). The KDOR is required to retain the NOSI "until it receives an application for a certificate of title to the vehicle and a certificate of title is issued. The certificate of title shall indicate any security interest in the vehicle." K.S.A. 2012 Supp. 8-135(c)(5).

Finally, though the panel found it "more procedural than substantive," Kansas law requires the KDOR to electronically retain possession of a certificate of title and to create an electronic certificate of title when the vehicle at issue is subject to a lien or encumbrance. *Stanley Bank*, 46 Kan. App. 2d at 426; see K.S.A. 2012 Supp. 8-135d (implementing electronic titling as of January 1, 2003, and authorizing adoption of necessary rules and regulations); see also K.S.A. 2012 Supp. 8-135(c) (providing that the provisions of K.S.A. 2012 Supp. 8-135[c][1] through [14] apply to electronic certificates of title unless those provisions "are made inapplicable by or are inconsistent with K.S.A. 2012 Supp. 8-135d"

or rules or regulations adopted pursuant to K.S.A. 2012 Supp. 8-135d).

Applying these provisions to the facts at hand, the Court of Appeals panel correctly concluded that the Bank's properly perfected purchase money security interest had priority over any interests of the defendants. First, the Bank obtained a purchase money security interest in the Yukon when the Parishes signed a security agreement with the Bank and obtained a loan for the purchase of the Yukon. See K.S.A. 2012 Supp. 84-9-103(a)-(b) (defining purchase money security interest). Next, the Bank properly perfected its purchase money security interest in the Yukon on January 31, 2006, by delivering a NOSI to the KDOR through the KDOR's electronic lien system. See K.S.A. 2012 Supp. 8-135(c)(5) (perfection occurs as of date of mailing or delivery of NOSI to KDOR); K.S.A. 2012 Supp. 84-9-311(a)(2) (security interest in goods subject to certificate-of-title laws is deemed perfected upon compliance with K.S.A. 2012 Supp. 8135[c][5]).

Because the Bank perfected its lien on January 31, 2006, and Bazin Excavating did not become a lien creditor until June 2007 when it obtained a money judgment against Parish and authorization to attach and sell the Yukon, the Bank's perfected security interest clearly had priority over any interest held by Bazin Excavating. See K.S.A. 2012 Supp. 84-9-102(a)(52)(A) (defining a "lien creditor" as "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like"). As the panel correctly found, the rights of a lien creditor take priority over the rights of a creditor holding a perfected security interest only if the entity becomes a lien creditor *before* the security interest is perfected. See *Stanley Bank*, 46 Kan. App. 2d at 429; see also K.S.A. 2012 Supp. 84-9-317(a)(2)(A).

Further, we agree with the panel's conclusion that Bazin, as a buyer of consumer goods, did not qualify for any exception that would allow him, as the purchaser of a vehicle, to avoid a prior perfected purchase money security interest in that vehicle. 46 Kan. App. 2d at 429. A buyer of consumer goods "takes free of a security interest, even if perfected, if the buyer buys: (1) Without knowledge of the security interest; (2) for value; (3) primarily for the

buyer's personal, family, or household purposes; *and* (4) *before the filing of a financing statement covering the goods.*" (Emphasis added.) K.S.A. 2012 Supp. 84-9-320(b); see K.S.A. 2012 Supp. 84-9-311(b) (providing that perfection pursuant to a certificate-of-title statute is equivalent to filing a financing statement).

In their petition for review, the defendants suggest the panel erred in finding this exception inapplicable because factual disputes remain regarding whether Bazin knew of the Bank's security interest in the Yukon when he purchased it at auction. But the defendants' argument overlooks the conjunctive "and" that precedes the fourth requirement in K.S.A. 2012 Supp. 84-9-320(b). Here, the defendants simply cannot establish the necessary fourth requirement, *i.e.*, that Bazin purchased the Yukon before the Bank perfected its security interest. As discussed, Bazin purchased the Yukon at auction in September 2007, long after the Bank perfected its security interest on January 31, 2006, by complying with 8-135(c)(5). Thus, the panel correctly held that Bazin does not qualify for an exception under K.S.A. 2012 Supp. 84-9-320(b). See K.S.A. 2012 Supp. 84-9-320(b)(4), Comment 5 ("After . . . the perfection requirements of the applicable certificate-of-title statute have been complied with . . . , all subsequent buyers, under the rule of subsection [b], are subject to the security interest.").

*The authorities cited by the defendants do not compel a different result.*

Rather than discuss the applicable UCC provisions relied upon by the panel, the defendants support their "clean title" argument with selective excerpts from *Mid American Credit Union v. Board of Sedgwick County Comm'rs*, 15 Kan. App. 2d 216, 806 P.2d 479, *rev. denied* 248 Kan. 996 (1991); and *In re Hicks*, 491 F.3d 1136 (10th Cir. 2007). But a review of these authorities does not compel the result suggested by the defendants.

In both cases, the "clean" titles were issued *before* the secured parties claiming priority perfected their security interests. For instance, in *Mid American Credit Union*, 15 Kan. App. 2d at 223, the panel found that a subsequent purchaser of a vehicle took the vehicle free of a purchase money security interest because the

credit union did not file a NOSI with the KDOR. The court thus held that the credit union failed to perfect its security interest before the KDOR issued a paper title to the original purchaser that did not reflect the credit union's lien.

In *Hicks*, 491 F.3d at 1138-43, the credit union filed a NOSI with the KDOR but, due to a clerical error, the purchase money security interest was neither recorded in the KDOR's digital records nor indicated on the purchasers' title application. Further, the KDOR issued a paper title to the original purchasers that did not indicate the credit union's lien. Applying Kansas law, the federal court concluded that the trustee in bankruptcy, as a lien creditor, had priority over the credit union because the credit union's purchase money security interest was not noted on the paper title issued to original purchasers and therefore was not perfected *before* the trustee became a lien creditor. 491 F.3d at 1142-43. Significantly, the *Hicks* court specifically declined to address 8-135d and its impact on a party's ability to rely on paper titles because, unlike here, neither the paper nor the electronic title reflected the lien.

Here, as we have noted, the Bank had perfected its purchase money security interest in the Yukon under K.S.A. 2012 Supp. 8-135(c) by properly completing and delivering a NOSI to the KDOR before Bazin Excavating became a lien creditor and Bazin purchased the Yukon. And while K.S.A. 2012 Supp. 8-135(c) did not require the Bank to take any further action to perfect the lien, this case is further distinguished by the fact that the KDOR properly recorded the Bank's lien in its electronic records and issued an electronic title in the Parishes' name properly reflecting the Bank's lien before the defendants acquired any interests in the vehicle. Finally, the Bank's perfected lien continued to be reflected in the KDOR's digital records even *after* Bazin obtained a "clean" paper title from the KDOR. Thus, neither *Hicks* nor *Mid American Credit Union* support the defendants' argument.

*The panel's comments regarding K.S.A. 2012 Supp. 84-9-337 are dicta.*

Finally, we note that the defendants devote a significant portion of the argument in their petition for review to a discussion of facts they claim the panel misunderstood in reaching its decision. These facts pertain to the panel's discussion of K.S.A. 2012 Supp. 84-9-337, a statute relating to security interests perfected in another jurisdiction. Significantly, the defendants fail to point out that the panel explicitly acknowledged the statute's inapplicability before inexplicably addressing the statute and finding it inapplicable under the facts of this case. *Stanley Bank*, 46 Kan. App. 2d at 430-31 ("This statute [K.S.A. 2012 Supp. 84-9-337] by its language applies only when 'a security interest in goods is perfected by any method *under the law of another jurisdiction* . . . .' ").

Undeterred, the defendants excise three "facts" from the panel's discussion of K.S.A. 2012 Supp. 84-9-337 and argue the panel erroneously affirmed the district court's summary judgment ruling based on a misunderstanding of these facts. But in light of the statute's inapplicability to the facts at hand, that portion of the panel's decision is clearly dicta and we need not address it here. See Black's Law Dictionary 519 (9th ed. 2009) (defining "gratis dictum" as "[a] court's discussion of points or questions not raised by the record or its suggestion of rules not applicable in the case at bar").

*Conclusion*

In sum, we hold the panel correctly concluded that the Bank's perfected purchase money security interest had priority over the defendants' interests in the Yukon and we affirm the panel's decision affirming the district court's grant of summary judgment in favor of the Bank and denying the defendants' motion for summary judgment.