No. 43,032

COMLEY-NEFF LUMBER COMPANY, *Plaintiff*, v. MARGARET RUTH ROSS, *Appellant*; FRED VULGAMORE, JR., and CUSTOM PLUMBING COMPANY, INC., a Corporation, *Defendants*; BRAGG TEMP-CONTROL, INC., a Corporation, *Appellee*; V. J. CLOUGH, BONTZ CONSTRUCTION CO., INC., a Corporation, MID-WESTERN MIRROR AND GLASS, INC., a Corporation, HOMER TOLER, d/b/a TOLER SHEET METAL WORKS, A. R. MALONEY, McBRIDE ELECTRIC, INC., a Corporation, CHESTER L. ANDERSON CO., INC., a Corporation, ROBERT RICH, d/b/a RICH AND RAINS DRY WALL CO., HOUSTON-DOUGHTY LUMBER COMPANY, a Corporation, and ARTHUR G. JOHNSON, Trustee in Bankruptcy in the Matter of Bontz Construction Co., Inc., a Bankrupt, Case No. 5882-B-2 in the United States District Court for the District of Kansas, *Defendants*.

(378 P. 2d 178)

Opinion filed January 26, 1963.

John S. Seeber, of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, William I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, Philip L. Bowman* and *Joe Rolston*, all of Wichita, were with him on the brief for the appellant.

*Robert L. Davis*, of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action whereby plaintiff lumber company sought foreclosure of a mechanic's lien. Named as defendants

were the property owner, the general contractor, and various other lien claimants. The appeal is from an order striking and eliminating from the action the cross-petition of the property owner against a codefendant whereby the property owner sought damages for slander of title.

The question presented will appear as the facts are developed.

Although multiple defendants appear in the title of the case, only two of them actually are parties to this appeal. They are Margaret Ruth Ross (appellant), the property owner (hereafter referred to as Margaret), and her codefendant lien claimant, Bragg Temp-Control, Inc., a Corporation, (appellee, hereafter referred to as Bragg).

In order, however, to show the entire picture in its proper perspective it is necessary to summarize allegations of pleadings of parties not directly involved in the appeal. The correctness of the statement of facts contained in Margaret's (appellant's) brief is unchallenged, and we summarize from it.

On December 31, 1960, Margaret entered into a contract with the defendant, Bontz Construction Company, Inc. (hereafter referred to as Bontz), by the terms of which Bontz agreed to build a dwelling house for Margaret for $30,950, in the city of Wichita. Construction of the house was commenced and Bontz entered into subcontracts with various materialmen, including Bragg, which provided for the purchase of labor, material and supplies to be used in the construction of the new house. By the terms of the construction contract Bontz had agreed, upon completion thereof, to deliver the new house to Margaret free and clear of all encumbrances. Construction was completed on or about June 1, 1961, at which time Bontz requested that Margaret make the $10,000 final payment due from her to Bontz under the contract. Margaret refused to make the final payment until furnished with proof that all subcontractors and materialmen had been paid in full for labor and materials furnished by them. On June 5, 1961, Bontz presented a written document to Margaret's husband, Don Ross, and who was acting as her agent. This instrument had been signed and executed by plaintiff lumber company, by Bragg, and also by other materialmen and subcontractors, and contained a certification to Margaret

that all labor and material bills to date had been paid in full. The document in question reads:

"BONTZ
CONSTRUCTION
COMPANY BUILDERS OF QUALITY SINCE 1922
2608 E. DOUGLAS
WICHITA 7, KANSAS

1 June 1961

"Mr. Don Ross:

"We, the undersigned, certify that all labor and material bills to date, have been paid in full for the new house located at 302 Bonnie Brae, Wichita, Kansas.

"Bragg Heating and Cooling
s/K. H. Skinner

"Comley Neff Lumber Co.
s/Morris N. Neff, Jr.

"Hill Electric Co.
s/Jim Lindsay

"McBride Electric Co.
s/R. A. McBride, president

"Virgil Clough Painting
s/Virgil Clough

"Miller Barker Co.
s/Wilbur Miller by D. L.

"Allen's Inc.
s/H. D. Ritchie

"Breese Hardware
by s/Olive Kennedy, Bkpr.

"National Association of Home Builders
"PHONE MU 2-4071"

(No contention is made that "Bragg Heating and Cooling," in the foregoing instrument, is not one and the same as "Bragg Temp-Control, Inc., a Corporation," the appellee here, and heretofore and hereinafter referred to as Bragg.)

In reliance upon the foregoing certification, Margaret made payment to Bontz of $8,550 of the final payment due under her contract with Bontz.

Notwithstanding its certification that it had been paid for all labor and materials used in the construction of the house, plaintiff lumber company, on June 30, 1961, filed its verified mechanic's lien statement for the sum of $7,948.03, and on July 19, 1961, commenced this action alleging that it had not been paid for labor and materials furnished by it, and sought foreclosure of its purported lien. Joined as defendants in the action were Margaret, Bragg, and various other lien claimants.

Despite its certification to Margaret that it had been paid for all labor and materials used in construction of the house, Bragg, on July 18, 1961, filed its verified mechanic's lien statement, and on August 31, 1961, filed its answer and cross-petition seeking foreclosure of its purported mechanic's lien against Margaret's property.

In its answer and cross-petition Bragg alleged that on or about January 24, 1961, it had entered into an oral contract with Margaret's husband, Don, who was acting for himself and as Margaret's agent, which provided for the installation of a heating and air conditioning unit in the house; that the value of the materials and labor furnished by Bragg was $2,852.94, which Margaret and her husband agreed to pay, and which remained due and unpaid. Bragg further alleged in its cross-petition against Margaret that on or about June 2, 1961, Bontz delivered its check to Bragg in the amount of $2,852.94, for which Bragg issued a signed receipt, but that the check was dishonored, and that the amount thus due Bragg remained wholly unpaid. Bragg further alleged that it had no contract with Bontz, and that the "certification" above set out, and which was signed by Bragg, was procured by fraud.

To Bragg's answer and cross-petition for foreclosure of its lien, Margaret, on October 19, 1967, filed her answer and joined therewith a cross-petition against Bragg for damages for alleged slander of title. In the meantime several other lien claimant defendants who had signed the certification in question also filed mechanic's liens and sought, by way of cross-petition, to foreclose the same against Margaret. In response to these cross-petitions against her Margaret also filed her answer and cross-petition alleging slander of title to her property.

Bragg's motion to strike from Margaret's cross-petition those allegations seeking damages for slander of title to her property because of the alleged wrongful assertion by Bragg of its mechanic's lien, was sustained, the effect of such ruling being to eliminate from

the action Margaret's cause of action against Bragg for slander of title.

It is from that ruling that Margaret has appealed.

The question thus presented is whether, under the facts, the assertion by Margaret, in her cross-petition against Bragg, of her cause of action for slander of title to her property, constituted a misjoinder of causes of action.

In support of the trial court's ruling appellee Bragg contends that appellant Margaret, by filing a cross-petition for damages against it, Bragg, became a plaintiff in effect, and that as her cross-petition affected only one co-defendant, Bragg, it failed to meet the requirement of mutuality and hence was improperly joined in the main action. Bragg further contends that Margaret's counterclaim did not arise out of the transaction set forth in Bragg's cross-petition and therefore it failed to meet the test of the counterclaim statute, and further that Margaret's cross-petition was improperly joined because the damages alleged by her did not exist at the time suit was commenced. And, finally, it is contended that Margaret's cross-petition was improperly joined because it created "practical problems" which cannot be disposed of conveniently in the main case. In support of these contentions a number of cases are cited, but which, in our opinion, are readily distinguishable upon their facts from the present case.

We think the question presented here is much less complicated than it might appear to be upon first impression.

G. S. 1949, 60-601, reads:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of action so united must affect all the parties to the action, *except in actions to enforce mortgages or other liens.*" (Emphasis supplied.)

G. S. 1949, 60-1406, relating to the enforcement of mechanic's liens, in pertinent part reads:

"In such actions all persons whose liens are filed as herein provided, and other encumbrances, shall be made parties, and issues shall be made and trials had *as in other cases* . . . ."

G. S. 1949, 60-710, relating to the contents of an answer, in pertinent part reads:

". . . The defendant may set forth in his answer as many grounds of defense, counterclaim, setoff and for relief as he may have, whether they be such as have been heretofore denominated legal or equitable, or both."

G. S. 1949, 60-711, relating to counterclaims, reads:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, *and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action.* The right to relief concerning the subject of the action mentioned in the same section *must be a right to relief necessarily or properly involved in the action for a complete determination thereof, or settlement of the question involved therein.*" (Emphasis supplied.)

The entire situation presented is clear. In reliance upon the written instrument of June 1, 1961, (set out above) whereby plaintiff lumber company, Bragg, and other materialmen, certified that all labor and material bills to date had been paid, Margaret made a substantial final payment to Bontz, the general contractor. It later developed that the check of Bontz to Bragg was no good and Bontz was adjudged a bankrupt. Notwithstanding its certification that it had been paid for all labor and materials used in the construction of the house, plaintiff lumber company filed its mechanic's lien statement and commenced this action seeking foreclosure of its lien. Despite its certification to the same effect, Bragg later filed its lien statement and filed its answer and cross-petition seeking foreclosure of its lien against the property in question. In filing its cross-petition to foreclose its lien, Bragg, in effect, became a plaintiff as to Margaret. She, under the provisions of the counter-claim statute (60-711, above), had the right, by way of cross-petition, to assert her counterclaim for damages for slander of title to her property. To say that her counterclaim did not arise out of the transaction set forth in the cross-petition of Bragg is to close one's eyes to the obvious. *All matters involved were part and parcel of the same transaction.*

In *Salina Coca-Cola Bottling Corp. v. Rogers,* 171 Kan. 688, 237 P. 2d 218, it was held:

"As used in the counterclaim statute the *subject* of plaintiff's action is broader than the mere *thing* sought to be recovered. The real subject is plaintiff's *principal primary right* to the relief sought, with which defendant's counterclaim must be connected.

"The counterclaim, if connected as indicated in the preceding paragraph or if it qualifies under either of the other two conditions mentioned in the statute, may be grounded in tort notwithstanding plaintiff's action is based on contract.

"The purpose and intent of the counterclaim statute is to permit a full determination or settlement in a single action of all controversies properly within the purview of the statute in order that a multiplicity of suits may be avoided.

"By virtue of G. S. 1949, 60-102 the provisions of the code of civil procedure and all proceedings thereunder must be liberally construed with a view to promote their object and assist the parties in obtaining justice. This command includes proceedings under the counterclaim statute." (Syllabi 6, 7, 8 and 9.)

Each of the various arguments and contentions made by both parties to this appeal has been noted and considered but further discussion of the question would serve no useful purpose. Under the facts presented by the pleadings the order of the trial court striking those allegations of Margaret's cross-petition seeking damages against Bragg for slander of title to her property because of the alleged wrongful assertion by Bragg of its mechanic's lien, was erroneous.

The judgment is therefore reversed.