NOT DESIGNATED FOR PUBLICATION

No. 113,025

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KAPE ROOFING & GUTTERS, INC., and
CHUCK COOPER,
*Appellants*,

v.

CHAD CHEBULTZ, an individual; and
COMMUNITY FIRST NATIONAL BANK,
a banking corporation,
*Appellees*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; DAVID R. PLATT, judge. Opinion filed July 8, 2016. Affirmed in part, vacated in part, reversed in part, and remanded with directions.

*Caleb Boone*, of Hays, for appellants.

*Pedro L. Irigonegaray* and *Elizabeth R. Herbert*, of Irigonegaray & Associates, of Topeka, and *Tim W. Ryan* and *Arvid V. Jacobson,* of Jacobson Ryan LC, of Manhattan, for appellees.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

*Per Curiam:* Our policy in Kansas is to try lawsuits on their merits and not to award judgments based on the inaction of trial counsel. Unfortunately, this case is an example of the struggle a trial judge has when a lawyer fails to do what he is supposed to do in a timely way. A Kansas judge, keeping in mind the rights of the parties, has the authority and duty to sanction parties and lawyers as needed in order to bring a legal

1

action to a just conclusion. Justice seldom arises from letting a case remain idle. In doing so, however, the judge must establish appropriate sanctions with an eye on what was done or not done. When setting sanctions, the judge must also consider the consequences of that lawyer's inaction. The more flagrant, harmful, foul deserves the more serious sanction.

We see no evidence in the record that Kape Roofing and Gutters, Inc. was complicit in Caleb Boone's failure to appear for a pretrial conference. We vacate the ultimate sanction of striking Kape's pleadings. We remand for reconsideration of imposing a more reasonable sanction.

*Chad Chebultz bought a house in Abilene.*

In 2011, Chad Chebultz contracted to purchase a house. Three days prior to the scheduled closing on the loan, the house suffered significant hail damage. Concerned that the bank would not close the loan on the purchase due to the hail damage, Chebultz got a repair estimate, in the form of a roofing contract, from Kape.

The contract total estimate from Kape was $20,226.34. It listed prices for roofing, guttering, and some power vents. The contract stated Kape was entitled to all insurance proceeds related to the work. On the contract there is also a check mark placed beside the term "contractor 10% O&P" (overhead and profit) but the corresponding blank line is filled in with the word "included." Chebultz never signed the contract. Kape, however, knew that Chebultz was not yet the owner of the house and that the insurance proceeds would first be paid to the original owner, Mike James, who, in turn, would give the proceeds to Chebultz.

Chebultz bought the house on July 18, 2011. Kape completed the roofing and guttering work on September 7, 2011, and Chebultz was satisfied with the work.

2

Their relationship deteriorated when the parties began disputing the amount owed. Kape sent Chebultz six conflicting invoices between September 2011 and February 2012. On February 22, 2012, Chuck Cooper, the owner of Kape, sent a letter to Chebultz demanding payment of $5,109.52 and threatened collection of the debt by his attorney.

Later, after Chebultz received a demand letter from Michael Alley, Kape's attorney, seeking $5,109.52 and threatening legal action, Chebultz placed signs in his yard critical of Kape's practices. Chebultz also threatened to post similar criticisms on local billboards, with some advertisers, in newspapers, and on radio and television.

On March 23, 2012, Alley recorded a mechanic's lien where Kape claimed a lien on the home for $5,109.52 plus interest from March 16, 2012, plus attorney fees. Alley relied on December 20, 2011, as the completion date for the Chebultz project to file the lien. Cooper told Alley, the attorney, that Chad Olson was a subcontractor for Kape. Alley did not have any knowledge of the facts surrounding how Olson came on the job, how Olson was paid, or who supervised Olson. Settlement negotiations between the parties failed.

*The lawsuit begins.*

Since the heart of this appeal is the subject of court-imposed sanctions, we elaborate on the various positions of the parties in the lawsuit. The tenor of the arguments, and the repeated inaction of one counsel demonstrates a case history that provides a context for our rulings. The progress of this legal action was not smooth, but was contentious and subject to frustrating delays. To illustrate this, we relate in detail how this action proceeded.

Kape filed a three-count petition against Chebultz and his lender, Community First. Count I sought a permanent injunction against Chebultz to prevent any further

display of signs and other alleged defamatory statements critical of Kape. Count II alleged causes of action against Chebultz for defamation, tortious interference with prospective business advantage, and breach of contract. Kape sought $7,200,000 in actual damages. Count III sought foreclosure of its mechanic's lien against Chebultz' property.

Chebultz and Community First filed general denials as answers. Chebultz did agree to a permanent injunction restraining him from posting any more signs but counterclaimed for fraud, violations of the Kansas Consumer Protection Act, and the tort of outrage.

Chebultz alleged for his consumer protection count that Kape committed deceptive acts by:

(1) attempting to obtain payments for overhead and profit when the contract specified that such payments (10 percent O&P) were included in the contract;

(2) representing Olson's work as its own to both extend the time for the filing of a mechanic's lien and to increase its entitlement to overhead and profit payments; and

(3) billing for both the materials already included in the contract, and for work not contemplated by the contract.

Chebultz also alleged that Kape's intentional outrageous conduct in filing a mechanic's lien and seeking foreclosure and sale of Chebultz' home unnecessarily caused Chebultz extreme and severe emotional distress. Chebultz subsequently amended his counterclaims for fraud and outrage to include claims seeking punitive damages.

*Chebultz seeks partial summary judgment claiming the lien was filed out of time.*

On January 27, 2014, Chebultz and Community First filed a joint motion for partial summary judgment, arguing that Kape had filed an untimely mechanic's lien because Kape could not establish a subcontractor relationship with Olson, whose work it relied upon to file its lien. Kape did not respond.

Then, on March 7, 2014, Kape's counsel, Caleb Boone, failed to appear at the scheduled pretrial conference. Chebultz and Community First moved to dismiss Kape's case for failure to appear. The district court struck the pleadings for Count II in Kape's petition as a sanction for not appearing and dismissed it for failure to prosecute. These were the claims for defamation, tortious interference, and breach of contract.

The court noted that Kape had not responded to Chebultz' and Community First's joint motion for partial summary judgment despite having received an extension of time to do so. The court granted their joint motion and then set a date of April 18, 2014, to hear evidence on Chebultz' remaining counterclaims. The journal entry reflecting the court's rulings noted that Kape's pleadings had been stricken for "failure to prosecute" and was filed on March 13, 2014.

After that, Kape filed a "MOTION TO DISMISS DEFAULT JUDGMENT PROCEEDINGS AND/OR MOTION FOR RELIEF FROM JUDGMENT OR ORDER OF DEFAULT BY FAX." In it, Kape argued:

(1)    the March 13, 2014, journal entry was not proper because Kape had not received proper statutory notice of the March 7, 2014, hearing under K.S.A. 2012 Supp. 60-255;

(2)    it was entitled to a jury trial;

5

(3)     Kape's counsel was out of state on March 7, 2014, and simply failed to file an agreed motion and order to continue; and

(4)     the district court should grant permission to file an interlocutory appeal.

In response, Chebultz argued that Kape was not entitled to an interlocutory appeal because the district court did not enter a default judgment at the March 7, 2014, hearing. Chebultz also argued:

(1)     the district court's order striking Kape's pleadings was an authorized sanction;

(2)     Kape lost its right to a jury trial when its pleadings were stricken as a sanction;

(3)     no statutory notice error occurred at the March 7, 2014, hearing because no default judgment was entered;

(4)     there was no evidence of excusable neglect justifying Kape's failure to timely move for a continuance of the March 7, 2014, hearing.

*The district court grants Kape no relief.*

The court denied Kape's request to reconsider its March 13, 2014, order striking Kape's pleadings on Count II. The district court found that Kape suffered no prejudice for being sanctioned at the March 7, 2014, hearing given that:

(1)     there was no proof of excusable neglect for Kape not being present at the hearing;

(2)     Kape had not controverted Chebultz' and Community First's joint motion for partial summary judgment; and

(3)     there was no request for a continuance before the district court.

6

The district court denied certification for an interlocutory appeal, noting that no final judgment had been entered at that point—only sanctions were ordered.

We pause to note here that the court had imposed sanctions on Kape before this. In April 2013, in an order compelling discovery, the court noted that Kape's counsel had failed to appear at the hearing for Chebultz' and Community First's motion to compel discovery. The day before the hearing, Kape's counsel sought to continue the matter but Chebultz' and Community First's attorneys had not consented to a continuance. The court ordered the discovery to be provided within 10 days and ordered Kape to pay almost $2,500 in attorney fees as a sanction. The court also ruled: "If Plaintiffs fail or refuse to provide the entire discovery within that time period, Plaintiffs' action will be dismissed, *i.e.*, all pleadings stricken."

After reaffirming the striking of Kape's pleadings, the court determined that Chebultz, as Kape requested, would have a jury trial on his counterclaims and whether punitive damages should be awarded. A status conference for those issues was set for June 25, 2014, and a jury trial was set for July 17, 2014. Counsel were instructed to, prior to the status conference, "File and exchange your proposed instructions."

On June 24, 2014, Chebultz filed his proposed jury instructions. Kape did not file any proposed jury instructions. Instead, on June 25, 2014, Kape filed a motion for summary judgment seeking dismissal of Chebultz' counterclaims.

In that summary judgment motion, Kape argued that:

(1)     Chebultz could not bring a consumer protection claim against Kape because Chebultz did not enter into a consumer transaction with Kape and was not a real party in interest;

7

(2)     no outrageous conduct occurred because Kape acted in good faith to file the mechanic's lien or, in the alternative, it was entitled to the "advice of counsel" defense to both the filing of the mechanic's lien and Chebultz' claim of outrage.

At the status conference held the same day, the district court changed the scheduled jury trial for July 17, 2014, to a bench trial because Kape had failed to file any proposed jury instructions. The district court clarified that it had not granted default judgment against Kape on March 7, 2014, and reconfirmed that it would not change its decision to strike Kape's pleadings for failing to appear at the pretrial conference. The district court also ruled that it would not consider Kape's June 25, 2014, motion for summary judgment because it was untimely. The district court, however, noted that it would still consider arguments on any legal issue after presentation of the evidence at trial.

On June 27, 2014, Kape moved to dismiss Chebultz' counterclaims. This motion mirrored the arguments from its June 25, 2014, motion for summary judgment. Five days later, Kape filed a factual statement based in part on Chebultz' pretrial questionnaire to support its motion to dismiss.

Chebultz responded by arguing that Kape's motion:

(1)     was untimely because the motion was filed beyond the ordered time for the filing of dispositive motions;
(2)     was an attempt to present the same arguments that were raised in its untimely June 25, 2014, motion for summary judgment; and
(3)     converted to a motion for summary judgment because Kape's factual statement relied on a pretrial questionnaire or matters outside the pleadings.

8

Chebultz also maintained that he was afforded the protections of the Consumer Protection Act and argued that Kape's contention that he was not a real party in interest under the Act went to the question of jurisdiction and, thus, was not subject to dismissal and required the presentation of evidence.

*The court tried the counterclaims.*

The district court conducted a bench trial. Chebultz testified extensively about how he had been emotionally, physically, and financially harmed by the lawsuit and the filing of the mechanic's lien. The parties stipulated to admit into evidence Alley's and Olson's depositions.

The district court granted judgment in favor of Chebultz. It rejected Kape's advice of counsel defense and reaffirmed its previous finding that the mechanic's lien claim was improper and out of time. The district court found that Chebultz was a true party in interest or a consumer. The district court also found that:

(1)   Kape caused Chebultz substantial financial loss;
(2)   Kape's actions constituted outrageous conduct; and
(3)   Kape intentionally and maliciously committed deceptive acts.

The district court ordered Kape to pay compensatory damages of $88,000 and punitive damages of $10,000 based on Kape's outrageous conduct, a civil penalty of $10,000 under the Act, and $20,000 for attorney fees. The district court adopted Chebultz' proposed findings of fact and conclusions of law as its own.

On November 5, 2014, the district court entered its final judgment under K.S.A. 2012 Supp. 60-254 granting Chebultz and Community First's joint motion for partial

9

summary judgment on Count III—the mechanic's lien foreclosure. The order was filed on December 5, 2014.

After that, the district court denied Kape's motion to alter or amend, ruling that Kape's advice of counsel defense was inapplicable as a complete defense to the claims of outrage and the alleged Act violations. Specifically, the district court found that Alley would not have considered Olson a subcontractor and filed the mechanic's lien had Kape given Alley accurate information concerning its relationship with Olson. The district court also reaffirmed its previous ruling that Kape met the threshold for committing outrageous conduct.

Kape makes four claims in this appeal. First, the grant of default judgment was void because of lack of notice. Second, the court erred in granting judgment under the consumer protection act as Chebultz was not a consumer. Third, the court erred by granting judgment and punitive damages for the tort of outrage. Finally, Kape contends the court erred when it denied its advice of counsel defense. We will address the issues in that order.

*The court did abuse its discretion in entering its sanction.*

Kape mistakenly argues that the court erroneously granted default judgment without first giving the statutorily required notice set out in K.S.A. 2012 Supp. 60-255(a). Twelve pages of its brief is devoted to this claim. The trouble with this argument is that this was not a default judgment proceeding that the court takes up when a party fails to answer. Instead, it was the imposition of a sanction after a party failed to appear at a required pretrial conference. Kape's argument is irrelevant. We view this as a matter of discretion on the part of the trial court.

10

Whether a district court erred in striking pleadings is reviewed for an abuse of discretion. *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. 54, 63-64, 824 P.2d 933 (1992). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Additionally, an abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. *Graham v. Herring,* 297 Kan. 847, 853-54, 305 P.3d 585 (2013).

The district court has broad discretion in the handling of the pretrial conference. *Burkhart v. Philsco Products Co.*, 241 Kan. 562, 565, 738 P.2d 433 (1987). Pretrial conferences are controlled principally by K.S.A. 2012 Supp. 60-216 and Supreme Court Rule 140 (2015 Kan. Ct. R. Annot. 239). K.S.A. 2012 Supp. 60-216(f) authorized the district court to impose a sanction after giving Kape the opportunity to be heard for failing to appear at a pretrial conference. Among the sanctions authorized is "striking pleadings in whole or in part." K.S.A. 2012 Supp. 60-237(b)(2)(A)(iii).

Here, the district court's sanction was authorized under K.S.A. 2012 Supp. 60-237(b)(2)—the statute for sanctions to be imposed where a party has not complied with discovery orders. Thus, in addressing the appropriateness of the sanction here, we can look for guidance at the legal principles surrounding appeals involving the imposition of sanctions and discovery. The Kansas Supreme Court has clarified

> "'where there is evidence that a party has acted in *deliberate disregard* of reasonable and necessary orders of a court, and where such party is afforded a hearing and an opportunity to offer evidence of excusable neglect, the imposition of a stringent sanction will not be disturbed.' [Citation omitted.] Additional principles to aid in ascertaining whether the district court abused its discretion emerge from decisions involving the sanction of default judgment. The sanction should be designed to accomplish the objects

11

of discovery rather than for the purpose of punishment. [Citation omitted.] Where the party failed to comply due to inability to do so rather than bad faith, a severe sanction such as dismissal or default probably would be inappropriate. [Citation omitted.]'" (Emphasis added.) *Shay v. Kansas Dept. of Transportation*, 265 Kan. 191, 194, 959 P.2d 849 (1998).

In finding that Kape had not presented evidence of excusable neglect, the district court focused on the fact that the case "had gone on for quite some time," Kape's failure to appear at the pretrial conference, and Kape's failure to move for a continuance.

"Inexcusable neglect," however, has been defined as "reckless indifference." It implies something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind. "Excusable neglect" is not susceptible to clear definition and must be determined from the unique circumstances of each case. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978).

On appeal, Kape summarizes the reasons it offered at the hearing on its motion to set aside the default judgment for failing to appear at the pretrial conference:

"Counsel for the Plaintiffs was in Eastern Pennsylvania on March 7[th]. Counsel for the Plaintiffs had informed the court and other counsel of that fact sometime before March 7, 2014.

"Counsel for the Plaintiffs was in the process of preparing the Journal Entry of Continuance but did not have at hand the new hearing date. Plaintiffs' Counsel therefore had contacted opposing counsel and the Court's administrative assistant to determine that date by telephone. Despite making these telephone calls, Counsel for the Plaintiff did not receive return telephone calls with this information.

"Counsel for the Plaintiffs was attempting to comply with the Court's orders and was simply trying to complete the drafting of the order for continuance and had inadvertently misplaced the note containing the correct new date and time for the hearing.

12

"When Counsel contacted the Court's Administrative Assistant, the Administrative Assistant did not have the new date and time and so Plaintiffs' Counsel contacted Defense Counsel to obtain that date, as stated above."

Chebultz generally does not dispute Kape's actions in not filing a timely motion for continuance, except to point out that Kape could have done more to ensure that the matter was put before the court.

Clearly, Kape did not appear at the pretrial conference, which is sanctionable, especially in light of the previous sanctions the court imposed. Yet Chebultz does not dispute that it had previously agreed to a continuance of the pretrial conference, and Kape's counsel did provide an explanation for his failure to not move for a continuance while he was in Pennsylvania. The record does not support a finding that Kape's counsel *deliberately* disregarded his obligation to be at the pretrial conference. See *Shay*, 265 Kan. at 194. The district court also declined to address Kape's suggestion that it impose a less severe sanction.

In our view, Caleb Boone failed to appear at a pretrial conference. To his credit, he had spoken with opposing counsel beforehand and ascertained that they did not object to a continuance of the conference if Boone prepared a motion and order. This he did not do.

The day came for the conference; one side appeared. Kape, represented by Boone, did not. This failure to appear came on the heels of Boone failing to file any response to Chebultz' motion for summary judgment. Evidently, that failure came after Boone's client had been previously sanctioned almost $2,500 in attorney fees for his failure to comply with discovery requests. We note that was another hearing that Boone failed to attend.

13

Contemplating this string of not doing things when they needed to be done makes us understand why the judge was exasperated with Boone's recurrent inattention to the case and his duty to move it forward. We understand the frustration the trial judge experienced when counsel delayed the resolution of this lawsuit.

We cannot tell from this record whether Boone did all of this deliberately or was simply negligent. If it was deliberate, then he was disrespectful of the very system he has sworn to uphold. If he was negligent, then he did his client a grave disservice.

Further, we cannot tell from this record if Boone's client participated in a strategy of delay. This concerns us because the sanction of striking its pleadings affects Kape the most. Should a litigant be penalized for the negligence of its agent? If Kape was in no way responsible for Boone's inaction, failure to appear, or move for a continuance, is it reasonable to punish his client? If there is evidence of complicity then we see where imposing the ultimate sanction is appropriate. We just cannot affirm such an action with the record we have before us.

Consequently, even though the district court properly exercised its discretion in imposing a sanction against Kape for failing to attend the pretrial conference, the striking of pleadings as a sanction was too severe. We vacate the sanction and remand the matter for a judicial determination of a more reasonable sanction.

*The court properly granted summary judgment to Chebultz on the mechanic's lien.*

Kape argues that the district court erred in granting partial judgment to Chebultz and Community First on Count III of Kape's petition—the foreclosure of the mechanic's lien.

14

Chebultz and Community First alleged in their joint motion that Kape's cause of action for foreclosure of the mechanic's lien could be disposed of on summary judgment because Kape could not establish that the relationship between Olson and Kape met the criteria for a subcontractor relationship, thus making the filing of the mechanic's lien untimely under K.S.A. 60-1102. Kape does not dispute that it filed nothing in response to Chebultz and Community First's joint motion before the district court considered the motion at the March 7, 2014, scheduled pretrial conference.

The standards governing whether the district court properly granted summary judgment are well known.

For summary judgment to be appropriate, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits must show that there is no genuine issue as to any material fact and that the party seeking summary judgment is entitled to judgment as a matter of law. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014). In short, the movant argues there is nothing for a jury or trial judge sitting as factfinder to decide that would make any difference. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. 298 Kan. at 759.

In addressing a request for summary judgment, the district court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party opposing the motion. *Stanley Bank*, 298 Kan. at 759. However, if a party opposing summary judgment fails to identify evidence disputing a particular factual representation made in support of summary judgment, the district court may treat that fact as admitted for purposes of deciding the motion. See *Seitz v. Lawrence Bank*, 36 Kan. App. 2d 283, 289-90, 138 P.3d 388, *rev. denied* 282 Kan. 791 (2006); Supreme Court Rule 141 (2015 Kan. Ct. R. Annot. 242). Moreover, a party opposing summary judgment may not rely on

mere allegations in his or her petition. K.S.A. 2012 Supp. 60-256(e)(2); *Carr v. Vannoster*, 48 Kan. App. 2d 19, 21, 281 P.3d 1136 (2012).

Because appellate courts apply the same standard, we are guided by these rules here. Therefore, in this case, if there is no genuine issue of material fact regarding Olson's lack of status as a subcontractor for Kape, then Chebultz and Community First are entitled to judgment as a matter of law.

Finally, whether a mechanic's lien statement complies with statutory requirements is a question of law over which appellate review is unlimited. *Buchanan v. Overley*, 39 Kan. App. 2d 171, Syl. ¶ 1, 178 P.3d 53 (2008); see K.S.A. 60-1102.

Chebultz and Community First properly supported their joint motion by directing the district court to evidentiary materials attached to the motion consisting of the roofing contract, various depositions, and exhibits. And the supplement to their joint motion provided a copy of Kape's general liability insurance policy detailing requirements for subcontractors.

For purposes of this appeal, because Kape made no effort to respond and point to evidence calling into question any of the material factual representations made in support of Chebultz and Community First's joint motion, we will construe the evidentiary material against Kape in determining whether partial summary judgment was properly granted to Chebultz and Community First. See *Stanley Bank*, 298 Kan. at 759.

We deem the following facts to be true: The initial roofing contract does not refer to interior work. Kape's agents gave Chebultz' contact information to Olson. Olson discussed the nature of, and corresponding bids, for the interior work with Chebultz, not Kape. Olson was not working for Kape and considered Chebultz to be his contractor. Chebultz made all payments to Olson and purchased all of the supplies for the interior

16

work that Olson completed. Olson received his final payment on December 30, 2011, for work he completed. Kape completed all of its work at the Chebultz home on September 7, 2011. Kape did not have a certificate of insurance for Olson demonstrating a subcontractor relationship. Kape relied on Olson's completion date to file a lien on March 23, 2012.

The district court, in considering these facts and granting partial summary judgment to Chebultz and Community First, concluded

> "it seems pretty clear to me, in reviewing everything, that there wasn't a contractual situation where Olson was the subcontractor. There was not work performed within the statutory period for the mechanic's lien for [Kape]; therefore, clear to this Court, based on the uncontroverted information before the Court, that Count 3 . . . would be dismissed, of [Kape's] petition, concerning the foreclosure of mechanic's lien."

Based on the facts, the district court correctly concluded that Olson was not a subcontractor and that Kape missed the statutory deadline for filing a mechanic's lien. K.S.A. 60-1102(a) allows a contractor to file a lien within 4 months after the last work is done "under the contract." Because Olson was not a subcontractor for Kape, any mechanic's lien filed by Kape had to be filed within the 4-month period after September 7, 2012, or before January 7, 2013. Thus, Kape did not file the mechanic's lien before the statutory deadline under K.S.A. 60-1102(a). As we have noted, Kape made no effort to satisfy the requirement of presenting admissible evidence establishing a dispute as to a material fact. On that basis alone, there was no evidence properly before the district court to suggest Kape had filed a timely mechanic's lien under K.S.A. 60-1102(a). See *Stanley Bank*, 298 Kan. at 759. Chebultz and Community First, therefore, were entitled to summary judgment.

*We address the applicability of the Consumer Protection Act.*

Kape essentially argues Chebultz had no standing to bring a claim under the Act because he was not a consumer. Kape asserts that Chebultz did not sign the written contract, did not have access to the insurance proceeds intended to pay for the contract, did not purchase Kape's services, and did not own the home where the work was performed.

In resolving questions of statutory interpretation, this court is mindful of the following rules of statutory construction. First, we attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. Second, when a statute is plain and unambiguous, we should not speculate about the legislative intent behind that clear language, and should refrain from reading something into the statute that is not readily found in its words. Lastly, where there is no ambiguity, this court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does this court use canons of construction or legislative history to construe the legislature's intent. *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014).

The Act's protection from a deceptive act or practice is limited to "'consumers' engaged in 'consumer transactions' with 'suppliers.'" *Berry v. National Medical Services, Inc.*, 41 Kan. App. 2d 612, 621, 205 P.3d 745 (2009), *aff'd on other grounds* 292 Kan. 917, 257 P.3d 287 (2011) (citing K.S.A. 50-623[b]; K.S.A. 50-624, comment [c]; K.S.A. 50-626[a]). A consumer is defined as "an individual . . . who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 2012 Supp. 50-624(b).

A consumer transaction is a sale, lease, assignment, or other disposition for value of property or services within Kansas (except insurance contracts regulated under state

18

law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions. K.S.A. 2012 Supp. 50-624(c). Kape does not dispute, and we assume arguendo, that Kape is a "supplier" as contemplated by the Act. Finally, "the guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer." *State ex rel. Stephan v. Brotherhood Bank and Trust Co.*, 8 Kan. App. 2d 57, 60, 649 P.2d 419 (1982); K.S.A. 50-623.

To have standing to sue under the Act, Chebultz must be a consumer. To be a consumer, one must have been a party to the contract for purchase. *First Nat'l Bank of Anthony v. Dunning*, 18 Kan. App. 2d 518, 524, 855 P.2d 493, *rev. denied* 253 Kan. 857 (1993). The Act's protection is limited to individuals who directly contract with suppliers for goods or services. *Ellibee v. Aramark Correctional Services, Inc.*, 37 Kan. App. 2d 430, 432, 154 P.3d 39 (2007). There are three inquiries in determining consumer status under the Act:  "(1) to whom were the representations made; (2) who suffered damages; and (3) who was affected by the defendant's alleged misconduct." 37 Kan. App. 2d at 432.

The district court, in rejecting Kape's argument that Chebultz was not a true party in interest, first pointed out that Kape sued Chebultz. The district court then found that Chebultz was a consumer who had an oral contract with Kape based upon the terms in the proposed roofing contract.

Kape attempts to avoid the obvious by asserting that there was no direct sale or exchange of value between it and Chebultz. Kape maintains that Chebultz did not purchase Kape's services because the insurance proceeds, which Chebultz received through James, paid for the contract. However, the fact that the source of the payments to Kape was insurance proceeds first conveyed from James to Chebultz does not affect the determination of Chebultz' status as a consumer. "The source of the funds has no bearing on who is a consumer under the KCPA." *Hayes v. Find Track Locate, Inc.*, 60 F. Supp.

19

3d 1144, 1152 (D. Kan. 2014). Moreover, there is evidence in the record on appeal that Kape made a representation directly to Chebultz on June 2, 2011.

Chebultz had direct contact with Kape in negotiating the contract and was a contracting party. And there is no dispute that Chebultz, as the individual acquiring a service, was the party that suffered the damages or was affected by Kape's misconduct.

We must also point out that Kape cannot have it both ways. Kape argues that it should avoid the statutory penalties under the Act because Chebultz did not have a contract. Yet, Kape seeks reversal of the district court's decision to strike its breach of contract claim in Count II of its petition so it can move forward with that claim. Kape asks this court to consider its agreement with Chebultz as a contract for purposes of enforcing a mechanic's lien. Accordingly, Chebultz is a consumer under the Act. See *Ellibee*, 37 Kan. App. 2d at 432.

*The tort of outrage claim is unsustainable with this record.*

In *Taiwo v. Vu*, 249 Kan. 585, 593, 822 P.2d 1024 (1991), the touchstone case on the tort of outrage, the Kansas Supreme Court found that the evidence sustained a jury verdict for the plaintiff on an outrage claim when "[r]easonable people could regard [Vu's] behavior as atrocious and utterly intolerable in a civilized society." What did Vu intentionally and maliciously do to the Taiwos?

> "She assaulted, battered, and falsely imprisoned Mrs. Taiwo; she first lied to a law enforcement officer when she called the police and then she lied to [another officer], both times claiming Mr. Taiwo had vandalized her van; she filed a false police report against the Taiwos concerning her Cadillac; Ms. Vu then induced an employee to lie to the police about the Taiwos' involvement in vandalism and when she was confronted, she challenged [the detective] to prove the Taiwos had not committed the vandalism." 249 Kan. at 593.

20

However, the majority of intentional infliction of emotional distress cases in Kansas have generally held in favor of defendants, finding the conduct alleged by plaintiff was insufficiently outrageous to support a claim. See *Lindemuth v. Goodyear Tire & Rubber Co*., 19 Kan. App. 2d 95, 100-01, 864 P.2d 744 (1993); see also *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986) (no outrage claim where bank erroneously set off funds against a legitimate indebtedness owed to bank), *cert. denied* 482 U.S. 906 (1987); *Burgess v. Perdue*, 239 Kan. 473, 475-77, 721 P.2d 239 (1986) (no outrage claim where doctor phoned mother after son's death to tell her she "'had her son's brain in a jar'"); *Neufeldt v. L.R. Foy Constr. Co.*, 236 Kan. 664, 668-69, 693 P.2d 1194 (1985) (no outrage claim allowed by a wife recovering from a miscarriage who was falsely told that an arrest warrant had been issued for her husband); *Roberts v. Saylor*, 230 Kan. 289, 295, 637 P.2d 1175 (1981) (no outrage claim where doctor expressed dislike of patient prior to patient undergoing surgery); *Ely v. Hitchcock*, 30 Kan. App. 2d 1276, 1289, 58 P.3d 116 (2002) (funeral director allowing plaintiff to view his mother's body with a cut to her forehead and blood on her face and hair not sufficient to support claim of outrage); *Henderson v. Ripperger*, 3 Kan. App. 2d 303, 305-06, 594 P.2d 251 (1979) (waitress falsely accusing patron of leaving without paying in front of other customers not sufficient to support a claim of outrage); but see *Gomez v. Hug*, 7 Kan. App. 2d 603, 609-11, 645 P.2d 916, *rev. denied* 231 Kan. 800 (1982) (issue of material fact existed on outrage claim regarding employer's constant, targeted verbal abuse and threats of violence over several days).

We recognize that another tort could be considered here—slander of title. Slander of title is defined as a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him or her injury. *Saddlewood Downs v. Holland Corp., Inc.*, 33 Kan. App. 2d 185, 198, 99 P.3d 640 (2004). Filing a patently insufficient mechanic's lien with the requisite malicious intent constitutes an actionable slander of title. See *Comely-Neff Lumber Co. v. Ross*, 190 Kan. 734, 740, 378 P.2d 178 (1963).

We mention this tort to illustrate our doubts concerning the outrageousness of Kape's conduct here rising to the level necessary for the tort of outrage. Kape filed a false affidavit in a vain attempt to claim a mechanic's lien. We have no doubt that such an action is reprehensible conduct, even actionable, but it is not so extreme as to be "intolerable in a civilized society."

Perhaps in some extreme case, the filing of or the refusal to release a factually insupportable mechanic's lien might give rise to a claim for outrage against the filer. In *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 825, 529 P.2d 104 (1974), the case recognizing the tort of outrage in Kansas, the court found Dawson had presented a submissible claim for outrage. There, a finance company continually dunned Dawson on a car loan even though she and her physician had told the company the high-pressure tactics were aggravating her multiple sclerosis and she informed the company she had requested the loan be paid off through the credit life insurance policy she purchased when she took out the loan.

The circumstances are not similar here. While Chebultz suffered significant emotional upset as a result of the mechanic's lien and the ongoing dispute with Kape, the company had no direct knowledge of his situation akin to what the finance company knew about Dawson.

We reverse the tort of outrage judgment.

*Advice of counsel is no defense to any claim here.*

Finally, Kape argues that the district court should have applied its defense of advice of counsel to Chebultz' counterclaims. In Kansas, the defense of advice of counsel is recognized only as a complete defense to malicious prosecution of a criminal charge or civil action. See *Bartal v. Brower*, 268 Kan. 195, 197, 993 P.2d 629 (1999) (finding that

the advice of counsel in initiating a civil action is a complete defense to malicious prosecution); *Hunt v. Dresie*, 241 Kan. 647, 659-60, 740 P.2d 1046 (1987) (setting forth the elements for defense of advice of counsel in a civil proceeding).

Chebultz correctly notes that Kape has presented no authority in Kansas law for the proposition that advice of counsel is a complete defense to a claim of outrage or to allegations under the Act. However, the Tenth Circuit has touched on the question whether the defense of advice of counsel can be applied outside the context of malicious prosecution.

In *Vulcan Materials Co. v. Atofina Chemicals Inc*., 355 F. Supp. 2d 1214, 1244 (D. Kan. 2005), the court considered the question whether the defense of advice of counsel, in addition to being a complete defense to a claim of malicious prosecution in Kansas, was a defense to a claim of fraud. The plaintiff had sought to exclude testimony of any evidence on behalf of the defendant "which would suggest that its decisions were rendered by the advice of counsel." 355 F. Supp. 2d at 1244. Relying on *Rea v. Wichita Mortgage Corp*., 747 F.2d 567 (10th Cir. 1984), the court found that while evidence of advice of counsel is not a complete defense to claims of fraud, the defense, nevertheless, may be introduced at trial to demonstrate whether or not the defendant acted with fraudulent intent. *Vulcan,* 355 F. Supp. 2d at 1244-45.

In *Rea,* the Tenth Circuit Court of Appeals pointed to numerous federal appellate decisions involving cases such as unfair labor practices, negligence and misconduct, tax evasion, and mail fraud and observed that "reliance on the advice of legal counsel is recognized as a valid defense in both civil and criminal contexts. While such reliance is not an absolute defense, it is a factor to be considered in determining a defendant's good faith, willfulness, or illegal intent." 747 F.2d at 576.

Both *Rea* and *Vulcan* indicate that a defendant may introduce evidence of advice of counsel as a defense at trial *to the element of intent* when the state of mind is relevant to the issue of liability.

We question then, whether this is pertinent to consumer complaints. The Act does not require a proof of intent to establish a violation. In *Willman v. Ewen*, 230 Kan. 262, 267, 634 P.2d 1061 (1981), the court ruled "there may be liability [under the KCPA] even though the deception or unconscionable practice was performed innocently and without the intent to injure the consumer"; see *Haag v. Dry Basement, Inc*., 11 Kan. App. 2d 649, 650, 732 P.2d 392, *rev. denied* 241 Kan. 838 (1987).

The district court indicated that it had reviewed Alley's deposition and he had testified to relying upon Kape to inform him that Olson was its subcontractor. The district court ruled that nothing in Alley's deposition would alter its prior determination that the mechanic's lien was improper and out of time because the advice given by Alley was based upon the false information Kape provided.

Kape could not avail itself of the advice of counsel defense at trial. The defense is conditioned on Kape having fully disclosed to Alley all the material facts within its knowledge. See *Hunt*, 241 Kan. at 659. Kape also had to disclose to Alley all material facts that it could have learned with diligent effort. See *Nelson v. Miller*, 227 Kan. 271, 279, 607 P.2d 438 (1980). Olson was not a subcontractor, and Kape's work was completed on September 7, 2011, not December 30, 2011. Therefore, in seeking advice from Alley to file the mechanic's lien, Kape did not make "a full and honest disclosure of all the material facts within [Kape's] knowledge or belief" regarding the status of Olson. *Hunt*, 241 Kan. at 659. As such, the district court's factual findings are supported by substantial competent evidence on this issue. We find no error here.

24

*We are concerned about the denial of a jury trial.*

Without elaboration, the trial court denied a jury trial on the remaining issues simply because Kape did not file any proposed jury instructions. Our problem with this sanction is that we know of no statute, rule, or case that requires a party to submit proposed jury instructions and thus the failure to do so would constitute a waiver of a party's right to a jury trial. K.S.A. 2012 Supp. 60-251(b)(3) states clearly that a judge shall instruct the jury. Thus, the duty to instruct falls on the court, not the parties. We recognize, of course that wise counsel would almost always submit proposed instructions that they deem favorable to their client's case, but there is no rule compelling them to do so.

Accordingly, upon remand, if any of Kape's issues in Count II are legally submissible to a jury, they can be tried to a jury.

We affirm the district court's grant of summary judgment holding that Kape's mechanic's lien was unenforceable because it was not timely filed.

We affirm that Boone's failure to appear at the pretrial conference was subject to sanction. But we vacate the striking of all of Kape's pleadings on Count II as unreasonable in the light of the record submitted on appeal and remand the matter for the court's reconsideration of a more appropriate sanction.

We affirm the district court's ruling that Chebultz was a consumer and that this transaction was governed by the Kansas Consumer Protection Act. We do not address Chebultz' consumer protection judgment as that was not raised as an issue in this appeal.

We reverse the tort of outrage judgment.

Affirmed in part, vacated in part, reversed in part, and remanded with directions.