NOT DESIGNATED FOR PUBLICATION

No. 115,449

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FANNIE MAE,
*Appellee*,

v.

DAVID G. SCHIEBER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed June 16, 2017. Affirmed.

*Jennifer M. Hill*, of McDonald Tinker PA, of Wichita, for appellant.

*Nicholas J. Zluticky*, of Stinson Leonard Street LLP, of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and FAIRCHILD, S.J.

*Per Curiam*: David G. Schieber was a guarantor of the obligations imposed on 1 Ashbury Court Partners, LLC (Ashbury), under the terms of a note and personal guarantee that was assigned to Fannie Mae. Ashbury defaulted on the note, and Schieber became personally liable for the entire amount owed to Fannie Mae. The district court granted Fannie Mae summary judgment against Schieber and several other defendants. Because he was not properly served, Schieber was not a party to the case at the time the district court granted summary judgment. After properly serving Schieber with the amended petition, Fannie Mae again moved for summary judgment. The district court again granted summary judgment to Fannie Mae, relying on the law of the case to adopt

the findings it made in its decision granting Fannie Mae's first motion for summary judgment. Although we find that the trial court should not have applied the law of the case doctrine, we find that the district court ultimately did not err in granting Fannie Mae summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2008, Ashbury and Wells Fargo Bank entered into a loan transaction. Ashbury executed a multifamily note in favor of Wells Fargo and a multifamily mortgage, assignment of rents, and security agreement (the mortgage), which granted Wells Fargo a mortgage lien on real estate located in Wichita, Kansas, and a security interest in the personal property described in the mortgage. As further security, the Key Principals—Schieber, Ross Meyeraan, Dr. Allen Thomashefsky, and Hillary Best—each executed a personal liability acknowledgement. Under the acknowledgement, each Key Principal agreed to "absolutely, unconditionally, and irrevocably" guarantee payment of the entire amount owed under the note. Wells Fargo then assigned the note and the mortgage to Fannie Mae.

Section 9(c) of the note provided that the Key Principals would be personally liable for the entire amount owed under the note if, among other things, a transfer constituting an event of default under the mortgage occurred. The mortgage defined such a transfer as: (1) "a Transfer of a Controlling Interest in any entity which owns, directly or indirectly through one or more intermediate entities, a Controlling Interest in Borrower"; or (2) "a Transfer of all or any part of Key Principal's ownership interests (other than limited partnership interests) in Borrower or in any other entity which owns, directly or indirectly through one or more intermediate entities, an ownership interest in Borrower." A transfer of a controlling interest was defined as "a Transfer of any membership or other ownership interest which would cause the Initial Owners to own less than 51% of all membership or other ownership interests in such entity."

2

Ashbury defaulted on the note by failing to make the required monthly payments. Fannie Mae notified Ashbury that it was exercising its right to accelerate repayment and that the entire amount of the note was immediately due. A couple of months later, Fannie Mae filed a petition seeking foreclosure of the mortgage and the appointment of a receiver. Ashbury filed for bankruptcy. Fannie Mae contested confirmation of Ashbury's plan of reorganization and sent interrogatories to Ashbury. Meyeraan, acting on behalf of Ashbury, answered the interrogatories and disclosed that at the time the note and mortgage were executed RTD Investments I, LLC, owned 51% of Ashbury. Meyeraan also disclosed that between November 14, 2009, and August 1, 2011, he transferred 11.65% of his membership interest to RTD Investments and Thomashefsky transferred his entire 13.35% membership interest to RTD Investments. Fannie Mae did not give either Meyeraan or Thomashefsky permission to make these transfers.

Because of Meyeraan's answers to its interrogatories, Fannie Mae filed an amended petition, seeking to hold the Key Principals personally liable for the amount owed under the note. Ashbury, Thomashefsky, and Best answered Fannie Mae's amended petition. Meyeraan filed for bankruptcy. Schieber was not properly served with the amended petition, and, in a letter to the district court, Schieber's attorney explained that Schieber would not file an answer unless Fannie Mae properly served him. Fannie Mae moved for summary judgment against Ashbury, Thomashefsky, and Best. In their response to the motion for summary judgment, Ashbury, Thomashefsky, and Best attempted to controvert Fannie Mae's statement of uncontroverted facts by relying on a sworn declaration from Meyerraan. In the sworn statement Meyeraan contradicted his previous answers to Fannie Mae's interrogatories in the bankruptcy case by swearing that his and Thomashefsky's interests in RTD Investments were the same at that time as they had been when the note and mortgage were executed. The district court granted summary judgment against Ashbury and Thomashefsky and a default judgment against Schieber. Fannie Mae eventually settled with Thomashefsky and Best.

Having obtained a judgment against Schieber, Fannie Mae sought to domesticate the judgment in Oregon, where Schieber lives. The Oregon court granted Schieber's motion to vacate, finding that the judgment was void because the district court had not acquired personal jurisdiction over him since he was not properly served with process. Fannie Mae appealed the order to the Oregon Court of Appeals. While the appeal was pending, Fannie Mae served Schieber with its amended petition. Fannie Mae then filed a motion with the district court, requesting that the district court declare that the initial service of process on Schieber was proper and that the judgment against Schieber was valid and enforceable. After the district court denied its motion, Fannie Mae dismissed the Oregon appeal and moved forward with its case against Schieber in Sedgwick County District Court.

In October 2014, more than 2 years after it had been filed, Schieber answered Fannie Mae's amended petition. Fannie Mae eventually filed a motion for summary judgment. In his response, Schieber relied on Meyeraan's declaration to controvert Fannie Mae's statement of facts and presented new legal arguments. The district court ultimately granted Fannie Mae's motion for summary judgment on the issue of Schieber's liability but denied summary judgment on the issue of damages. In its order, the district court stated that while collateral estoppel did not apply, the law of the case doctrine did apply and it was bound by its ruling on Fannie Mae's first motion for summary judgment.

Schieber timely appeals the district court's decision to grant summary judgment on the issue of liability.

DID THE DISTRICT COURT ERR IN APPLYING THE LAW OF THE CASE DOCTRINE?

Whether a district court appropriately applied the law of the case doctrine is a legal question subject to this court's unlimited review. *State v. Parry*, 305 Kan. 1189, 1193-94, 390 P.3d 879 (2017). The doctrine of law of the case provides that issues that

4

have already been decided should not be relitigated in a later stage of the same case. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1212, 308 P.3d 1238 (2013). The doctrine's purpose is "to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts." *State v. Collier*, 263 Kan. 629, Syl. ¶ 2, 952 P.2d 1326 (1998). While application of the doctrine is discretionary, issues should be relitigated only if the previous decision was clearly erroneous or relitigation would prevent manifest injustice. See *Venters v. Sellers*, 293 Kan. 87, 99, 261 P.3d 538 (2011).

In this case the district court applied the law of the case doctrine to support its finding that Scheiber was liable for payment of the balance of the note. Fannie Mae's amended petition listed Schieber as a defendant. However, Fannie Mae failed to properly serve him, and Schieber was not a party at the time the district court first granted summary judgment to Fannie Mae. It was only after Fannie Mae realized that it would be unable to enforce the previous judgment that it properly served Schieber. Federal courts have held that when a complaint is amended to add additional parties, "'[t]he law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise.' [Citations omitted.]" *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003); see also *In re Grasso*, No. 14-1741, 2014 WL 3389119, at *3 (E.D. Penn. 2014) (unpublished opinion) ("when a new party is added to a proceeding, a prior determination does not constitute law of the case as to the new party"). Because Schieber was a new party to the case, the law of the case doctrine did not apply to any decision made prior to Schieber being properly served with process.

As a result of the district court applying the law of the case, Schieber did not have the opportunity to raise his own arguments. Although Fannie Mae claims otherwise, Schieber raised arguments that the previous defendants did not. In other contexts, this court has defined "'manifest injustice'" as "'obviously unfair' or 'shocking to the

5

conscience.'" *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007) (quoting *State v. Cramer*, 17 Kan. App. 2d 623, 635, 841 P.2d 1111 [1992], *rev. denied* 252 Kan. 1093 [1993]). To assure basic fairness in each case, the requirements of due process vary. *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006). But the elements of procedural due process generally are "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1275, 136 P.3d 457 (2006). Not affording Schieber an opportunity to be heard was obviously unfair, making it necessary to relitigate the summary judgment issue to prevent manifest injustice. The district court therefore erred in applying the doctrine of the law of the case.

## DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT TO FANNIE MAE?

When it reviews whether summary judgment was appropriate, this court applies the same rules as the district court. *Stanley Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014). A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2016 Supp. 60-256(c)(2). All facts and inferences reasonably drawn from the evidence must be resolved in favor of the party against whom summary judgment is sought. A party opposing a motion for summary judgment must present evidence showing that a material fact is disputed. Disputed facts "must be material to the conclusive issues in the case." 298 Kan. 755, Syl. ¶ 1. If reasonable minds can come to different conclusions based on the evidence, summary judgment must be denied. 298 Kan. 755, Syl. ¶ 1.

Schieber first argues that a genuine issue of material fact existed because the only evidence Fannie Mae offered that demonstrated a transfer of interest had taken place was Meyeraan's answers to the interrogatories in the bankruptcy case, which he later refuted in his sworn declaration. However, "[a]n affidavit cannot be used to controvert a prior

6

sworn statement in order to create an issue of material fact and defeat a motion for summary judgment." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 314, 756 P.2d 416 (1988). In his answers to Fannie Mae's interrogatories in the bankruptcy case, Meyeraan, acting on behalf of Ashbury, admitted that he and Thomashefsky had transferred interests in RTD Investments. He later signed a sworn statement in support of the other defendants' response to Fannie Mae's first motion for summary judgment, averring that his and Thomashefsky's interests in RTD Investments were the same as they had been when the note and mortgage were executed. Because it appears that the purpose of Meyeraan's second declaration was to controvert his prior sworn statement, Schieber cannot use the second declaration to create an issue of material fact.

Schieber further argues that a genuine issue of fact existed because Fannie Mae failed to present evidence showing when exactly the transfers occurred. He claims the date of transfer is relevant because if the transfers occurred after Fannie Mae declared a default, the Key Principals were no longer bound by the mortgage contract. To be genuine, however, an issue of fact must have "legal controlling force as to the controlling issue." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). Schieber, as the party opposing summary judgment, had the burden of showing that the Key Principals were free under the mortgage contract to make transfers if the transfers occurred after Fannie Mae declared a default. See *Parish*, 298 Kan. 755, Syl. ¶ 1.

In Kansas the mortgage is not merged into the judgment until the mortgage is foreclosed. See *Federal Land Bank of Wichita v. Brown*, 15 Kan. App. 2d 302, 305, 807 P.2d 702, *rev. denied* 248 Kan. 995 (1991). According to Meyeraan's answers to Fannie Mae's interrogatories, the transfers occurred sometime before August 1, 2011. As a result, the Key Principals were bound by the mortgage contract until August 31, 2012, when the district court granted Fannie Mae's first motion for summary judgment.

7

While he cited legal treatises and federal cases as support for this position in his response to Fannie Mae's motion for summary judgment, on appeal Schieber does not cite any legal authority or point to any relevant provision of the applicable contracts to support his argument. Schieber's failure to cite pertinent authority is akin to failing to brief the issue. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

Schieber finally argues that a genuine issue of material fact existed because although it relied on Meyeraan's answers to its interrogatories from the bankruptcy case, Fannie Mae disclosed in its answers to Schieber's interrogatories that one of its senior asset managers was the only person to have information relevant to the claims. "But interrogatory answers are not binding judicial admissions—they are just evidence, like any other evidence that the court may consider." *M&I Bank v. Cookies on Demand, L.L.C*, No. 104,737, 2012 WL 686714, at *3 (Kan. App. 2012) (unpublished opinion). Fannie Mae also made it clear in its motion for summary judgment, which was filed before it answered Schieber's interrogatories, that it was relying on Meyeraan's answers to its interrogatories from the bankruptcy case. Also, Schieber cannot claim that Meyeraan did not have relevant information about the claims because he relied on Meyeraan's declaration in opposing summary judgment. Thus, even though it should not have applied the law of the case doctrine, the district court ultimately did not err in granting summary judgment to Fannie Mae. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (district court right for wrong reason).

Affirmed.